The STATE of Ohio, Appellee,

v.

GILLESPIE, Appellant.

[Cite as *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21747.

Decided June 29, 2007.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

Shawn P. Hooks, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Mark Gillespie, appeals from his conviction and sentence for felonious assault.

{¶ 2} The evidence presented at trial shows that on March 30, 2006, at around midnight, William Banks went to the home of defendant and his girlfriend, Jessica Clemons, at 631 Summit Square Drive in Dayton. Banks had some stereo equipment that he attempted to sell defendant. Defendant testified that Banks came to his home seeking to purchase drugs from him and that while searching his pockets for money, Banks emptied his pockets on defendant's kitchen table. At that time defendant noticed that Banks had a knife.

{¶ 3} Defendant was not interested in the stereo equipment, but he agreed to go with Banks to the home of a friend who might be interested. While Banks was still at defendant's home, defendant noticed that some drugs and money he had had on his kitchen table were missing. Defendant accused Banks of stealing

his property, and defendant asked Banks to return it. Banks denied taking anything belonging to defendant.

{¶ 4} Defendant told Clemons not to let Banks leave. Defendant ran upstairs and then yelled down to Clemons, asking where his shotgun shells were. When Banks heard the clicking sound of a gun being cocked or loaded, he fled from defendant's home and went to his mother's house at 5610 Hoover Avenue, which was nearby. Defendant testified that he retrieved a loaded shotgun for protection because he knew Banks was armed with a knife.

{¶ 5} After retrieving a loaded shotgun, defendant went looking for Banks. Defendant testified that he felt he needed the shotgun to resolve the issue with Banks. Defendant went to the home of Banks' s mother, Iris Shells, and knocked on the door. William Banks answered the door, and defendant told Banks to come outside. Banks complied. Defendant accused Banks of taking his property. Banks denied that and offered to help defendant look for his missing property. Banks and defendant walked back to defendant's home, followed by Banks's mother and two of defendant's friends, Bridgett Lucas and Shatonna Dominick.

{¶ 6} Banks and his mother went inside defendant's home, and the argument over Banks taking defendant's property escalated. Clemons asked Banks and his mother to leave, and they left defendant's home. Defendant followed them outside. According to Banks and his mother, when Banks's mother repeatedly asked defendant why he needed a shotgun, defendant said, "This is what I think of your son," and then raised the shotgun and suddenly fired at Banks, striking him in the right arm. Banks denied having a knife or making any aggressive moves toward defendant. Banks ran to some nearby apartments and the police were called. As a result of the shooting, Banks cannot use his right arm.

{¶ 7} According to defendant and his witnesses, while defendant was outside talking to Banks's mother, with his back turned to William Banks, Banks pulled a knife out of his pocket, opened it up and began approaching defendant. When Lucas and Dominick yelled at defendant to warn him, defendant turned around and saw Banks coming at him with a knife, and defendant raised the shotgun and fired once at Banks. The blast hit Banks in the arm and he dropped the knife and ran to some nearby apartments.

{¶ 8} Defendant testified that he was in fear of great bodily harm because he thought Banks was going to stab him. According to defendant, he was on his porch, three to five steps from his front door, when he shot Banks. Defendant testified that he later took the knife and the shotgun to his cousin's home. Neither defendant nor his witnesses told police that Banks had had a knife.

{¶ 9} Defendant was indicted on one count of felonious assault involving serious physical harm, R.C. 2903.11(A)(1), one count of felonious assault involving use of a deadly weapon, R.C. 2903.11(A)(2), and one count of abduction, R.C. 2905.02(A)(2). A firearm specification, R.C. 2941.145, was attached to each charge. At the conclusion of a jury trial, the state withdrew the abduction charge. The jury found defendant guilty of felonious assault involving use of a deadly weapon, and the attached firearm specification, but was unable to reach a verdict on the charge of felonious assault involving serious physical harm. The trial court sentenced defendant to seven years for felonious assault, plus an additional three years on the firearm specification, for a total of ten years. The court additionally imposed a consecutive one and one-half year prison term for defendant's violation of postrelease-control sanctions imposed in a previous case.

{¶ 10} Defendant timely appealed to this court from his conviction and sentence.

## FIRST ASSIGNMENT OF ERROR

{¶ 11} "The trial court erred as a matter of law when it failed to instruct the jury on self defense."

{¶ 12} Self-defense is an affirmative defense, and the burden of going forward with evidence of self-defense and the burden of proving self-defense by a preponderance of the evidence is upon the accused. R.C. 2901.05(A); *State v. Jackson* (1986), 22 Ohio St.3d 281, 22 OBR 452, 490 N.E.2d 893. To establish self-defense, a defendant must prove (1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755. If a defendant fails to prove any one of these elements, he has failed to demonstrate that he acted in self-defense. *Jackson.*

{¶ 13} In determining whether a defendant has sufficiently raised an affirmative defense such as self-defense to warrant a jury instruction, the test to be applied is whether the defendant has introduced evidence that, if believed, is sufficient to raise a question in the minds of reasonable persons concerning the existence of the offense. *State v. Melchior* (1978), 56 Ohio St.2d 15, 10 O.O.3d 8, 381 N.E.2d 195. Because proof of an affirmative defense creates reasonable doubt of a defendant's guilt, its proof is a bar to criminal liability for the offense charged.

{¶ 14} Defendant requested a jury instruction on self-defense and objected to the trial court's refusal to give that instruction. The trial court refused to give the instruction because it found that the evidence presented by defendant, even if believed, failed to demonstrate that defendant was not at fault in creating the situation that ultimately led to the shooting of William Banks.

{¶ 15} In arguing that the evidence was sufficient to justify an instruction on self-defense and that he was not at fault in creating the situation that caused him to shoot Banks, defendant points to his claim that Banks came to his house and stole his property. Defendant also points to his claims that (1) while at defendant's house, Banks emptied his pockets on the kitchen table, at which time defendant observed that Banks had a knife in his possession; (2) defendant subsequently retrieved a loaded shotgun for his protection; (3) defendant did not start any fight or physical altercation with Banks and did not hit him first; (4) defendant shot Banks only after Banks came at defendant with a knife; and (5) defendant did not intend to shoot Banks, but rather wanted only to shoot past him in order to frighten him into dropping the knife.

{¶ 16} Defendant's contentions ignore evidence concerning the role defendant played in the confrontation with Banks. Defendant's own testimony demonstrates that he could have avoided the confrontation with Banks by simply remaining at home after Banks left defendant's home. Instead, defendant took his loaded shotgun and went looking for Banks, intending to retrieve his stolen property. When defendant located Banks at his mother's house, defendant summoned Banks to come outside and then escorted Banks back to his house, where the argument over whether Banks took defendant's property continued and escalated. Simply put, defendant's own conduct renewed the confrontation with Banks, which had ended when Banks left defendant's home.

{¶ 17} The first prong of the *Robbins* test for self-defense—that the defendant was not at fault in creating the situation giving rise to the affray—does not require a showing that the defendant played no part in it. Neither does it preclude the defense if the defendant was engaged in criminal conduct when he was attacked. *State v. Turner*, 171 Ohio App.3d 82, 869 N.E.2d 708. Rather, it requires a defendant to show that he was not "at fault" in creating the situation; that is, that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant.

{¶ 18} In our view, defendant's conduct, as described by defendant, including bringing the shotgun when confronting Banks, did not rise to a level of wrongdoing such that reasonable persons could not doubt defendant's criminal liability in shooting Banks. *Melchior*, 56 Ohio St.2d 15, 10 O.O.3d 8, 381 N.E.2d 195. Defendant's claim that Banks attacked him with a knife must be assumed true when weighing defendant's right to claim self-defense. Id.

{¶ 19} Defendant set out to recover drugs and money he believed Banks had stolen from him. Even if he possessed that property illegally, that illegality did not provoke Banks to attack defendant. Further, defendant did not brandish the shotgun or make threatening remarks, and defendant arguably carried the shotgun to protect himself against Banks, whom defendant believed was a thief and a drug addict. Other factors, including the conduct of Banks' s mother, appear to have escalated the situation. How all those factors interacted to cause Banks to attack defendant in the way defendant claims presents a question for the jury to sort out. Therefore, the trial court abused its discretion when it refused to give the self-defense instruction defendant requested.

{¶ 20} The first assignment of error is sustained.

## SECOND ASSIGNMENT OF ERROR

{¶ 21} "The trial court erred as a matter of law in violation of Mr. Gillespie's Sixth Amendment rights when it imposed a consecutive sentence based on judicially determined facts."

{¶ 22} Citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, defendant argues that his Sixth Amendment right to jury trial was violated in this case because the trial court imposed consecutive sentences based upon findings of fact made by the trial court pursuant to R.C. 2929.14(E)(4) that were not considered by the jury or admitted by defendant.

{¶ 23} The trial court sentenced defendant to seven years for felonious assault plus an additional and consecutive three-year term on the firearm specification. Pursuant to R.C. 2929.14(E)(1)(a), those sentences must be served consecutively. Such consecutive sentences are not imposed on findings made by the court pursuant to R.C. 2929.14(E)(4), and they do not implicate *Foster*.

{¶ 24} The trial court additionally imposed a one and one-half year prison term for violating the postrelease-control sanction imposed on defendant in a previous case. Pursuant to R.C. 2929.141(B)(1), the court's sentence for the postrelease-control violation must be served consecutively to the seven-year sentence imposed by the court for this new felony offense. Such consecutive sentences are not imposed pursuant to R.C. 2929.14(E)(4) and do not implicate *Foster*.

{¶ 25} Finally, defendant was sentenced to a four-year prison term on an unrelated drug offense in another case that occurred before defendant committed this offense. The trial court in that unrelated case ordered that the four-year sentence be served consecutively to the sentence imposed in this case. The

record discloses that the four-year sentence and its consecutive nature was agreed to by both parties and imposed by the trial court. Accordingly, that sentence is not reviewable on appeal. R.C. 2953.08(D).

{¶ 26} Defendant's second assignment of error is overruled. Having sustained defendant's first assignment of error, we reverse his conviction and sentence and remand the cause for a new trial.

FAIN, J., concurs.

DONOVAN, J., dissents.

DONOVAN, J., dissenting.

{¶ 27} I dissent from the decision of the majority because I believe that Gillespie's own admission deprived him of the right to a jury instruction on self-defense.

{¶ 28} First, Gillespie acknowledges that he went to Banks's location to "resolve" a purported theft of his dope and money:

{¶ 29} "I just asked him to give me my money and dope back that was on the table."

{¶ 30} It is undisputed that Gillespie took with him a loaded shotgun for protection. Prior to this aggressive act by Gillespie, Banks had neither threatened nor assaulted Gillespie.

{¶ 31} I do not mean to suggest that a person who participates in a criminal enterprise is automatically deprived of the right to assert self-defense. As noted by Judge Painter in his dissent in *State v. Robinson* (1999), 132 Ohio App.3d 830, 842, 726 N.E.2d 581, "such a rule would preclude a purchaser of drugs from asserting self-defense if the seller attacked him or her, and foreclose a prostitute from asserting the defense if a case involved a brutal attack by a customer." However, given the aggressive action taken by Gillespie in order to recover his cash and drugs, he was at fault in creating the situation giving rise to the felonious assault. Gillespie not only created the situation, but extended it after Banks had left Gillespie's residence a second time.

{¶ 32} Gillespie made two further damning admissions that demonstrate that he initiated the physical confrontation and did nothing to avoid the danger.

{¶ 33} "Q: You said 'I just could have avoided it?'

{¶ 34} "A: If I would have stayed at home it could have been avoided.

{¶ 35} "Q: And you could have walked away and nothing would have occurred, is that a fair statement?

{¶ 36} "A: It's fair."

{¶ 37} Accordingly, given the particular facts of this case, I cannot conclude that the trial court erred in denying Gillespie's request for a self-defense instruction.