The STATE of Ohio, Appellee,

v.

TURNER, Appellant.

[Cite as *State v. Turner*, 175 Ohio App.3d 250, 2008-Ohio-1578.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2007 CA 82.

Decided March 28, 2008.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

James D. Owen, for appellant.

WOLFF, Presiding Judge.

{¶ 1} Jeremy W. Turner appeals from a judgment of the Clark County Court of Common Pleas, which denied his request to withdraw his guilty plea. The trial court conducted a hearing on the motion before rendering its decision, as required by our judgment and remand in *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708 (*"Turner I"*).

{¶ 2} In 2003, Turner entered into a plea agreement in which he pleaded guilty to voluntary manslaughter with a firearm specification. At the plea hearing, the prosecutor stated that the voluntary-manslaughter offense arose from a drug deal that went awry. Several persons from whom Turner planned to purchase marijuana attempted to rob him. In the process, one man pointed a gun at Turner while two others struck him. Turner then pulled his own gun, and several shots were exchanged. One of Turner's assailants was killed. Id. at ¶ 3. The court accepted Turner's plea and sentenced him to an aggregate term of 12 years in prison.

{¶ 3} More than two years later, Turner filed a motion to withdraw his guilty plea on the basis of ineffective assistance of counsel. Although Turner presented several arguments in his motion, only one is pertinent to this appeal: Turner asserted that his trial counsel had incorrectly advised him that a claim of self-defense was unavailable to him because he had been engaged in criminal activity—the purchase of drugs—when the shooting occurred. Turner supported his argument with a letter from his trial attorney, written approximately seven months after he pleaded guilty, in which the attorney did, in fact, advise Turner that a claim of self-defense was unavailable to him because of his own criminal activity. The trial court overruled Turner's motion to withdraw his guilty plea

without a hearing and without addressing Turner's argument that he had been denied the effective assistance of counsel.

{¶ 4} In *Turner I*, we observed that Turner's claims that he was not the first aggressor and that he fired his gun in self-defense after one of his assailants held a gun on him were supported by the prosecutor's recitation of facts at the plea hearing. We also noted that the letter from Turner's trial attorney supported Turner's assertion that he had been told that a self-defense claim was unavailable to him because he was engaged in a drug deal when the shooting occurred. We pointed out that it was immaterial whether Turner was involved in criminal conduct when the shooting occurred as long as his conduct did not give rise to the affray and he was not the first aggressor. We concluded that the trial court had erred in failing to conduct a hearing on Turner's motion, stating:

{¶ 5} "[I]f defendant was denied an opportunity to present a self-defense claim at trial because of his trial counsel's erroneous advice that defendant was not entitled to assert that defense, the trial court would be obligated to permit withdrawal of defendant's * * * plea because counsel's deficient performance created a manifest injustice by impairing the knowing, intelligent, and voluntary character of defendant's plea."

{¶ 6} Having so held, we remanded to the trial court for a hearing on Turner's motion to withdraw his guilty plea. After conducting such a hearing, the trial court again overruled Turner's motion to withdraw his guilty plea.

{¶ 7} Turner raises two assignments of error on appeal. We will address these assignments together.

{¶ 8} I. "The trial court erred when it unreasonably determined that defendant-appellant received effective assistance of counsel based on what trial counsel stated he meant rather than upon what [trial] counsel stated to defendant-appellant."

{¶ 9} II. "The trial court erred when it unreasonably relied upon incorrect facts and misstatements of law in denying defendant[-]appellant's motion to withdraw guilty plea."

{¶ 10} Turner contends that the trial court abused its discretion in overruling his motion to withdraw his plea because it ignored the attorney's misstatement of the law despite Turner's reliance on it and relied upon "incorrect facts and misstatements of law" in its decision.

{¶ 11} Pursuant to Crim.R. 32.1, a trial court may permit a defendant to withdraw his guilty plea after sentence has been imposed in order to correct a manifest injustice. *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 8; *State v. Smith* (1977), 49 Ohio St.2d 261, 264, 3 O.O.3d 402, 361 N.E.2d

1324; *State v. Hartzell* (Aug. 20, 1999), Montgomery App. No. 17499, 1999 WL 957746. The manifest-injustice standard demands a showing of extraordinary circumstances, and the defendant bears the burden of proof. *Smith*, 49 Ohio St.2d at 264, 3 O.O.3d 402, 361 N.E.2d 1324; *Hartzell*, supra.

{¶ 12} At the hearing, Turner and his grandmother testified that in their conversations with the attorney, James Heath, Heath had told them that Turner was "not entitled to self[-]defense" because he had been engaged in a drug transaction at the time of the shooting. This representation is consistent with the following statement in the above-referenced letter from Heath to Turner: "I told you case law indicates to me that, since you were in the act of committing a crime when the shooting occurred, the defense of self-defense was not available to you. * * *"

{¶ 13} Heath also testified at the hearing. After some discussions about attorney-client privilege, the full substance of Heath's testimony was contained in the following statement, which refers to the letter mentioned above:

{¶ 14} "What I meant by the availability of the defense of self-defense in that letter was the same as it had been in numerous conversations between the defendant and myself about the defense of self-defense; and that was that he can raise the defense, but I did not believe that he could raise it successfully. If he raised it unsuccessfully, the penalties would be much more severe than those which resulted on the plea."

{¶ 15} The court denied Turner's motion to withdraw his plea. Because the court's reasoning is critical to our resolution of the case, we quote it extensively herein:

{¶ 16} "The Court has a difficult time believing that a defendant would be under the impression that he couldn't advance a certain defense. I mean, he has the right to testify at his trial; and Judge Lorig went over those rights with the defendant at the time of the plea. He told the defendant you would have the right to testify at your hearing but that you could not be compelled to do so. Those are not exact words, but he explained that right to the defendant.

{¶ 17} "So the defendant knew at the time he entered the guilty plea that he could go to trial; get on the witness stand; give his version of the events; tell the jury that he was in fear of imminent danger, death, or great bodily harm; and that he fired shots in self-defense.

{¶ 18} "And in any case where a defendant is charged with shooting another person, killing another person, anybody can raise self-defense. Anybody can claim self-defense. Self-defense is available to everybody so it's the law of the land. Anybody can raise it, just like anybody can raise alibi, just like anybody

could raise identity that it wasn't the—that they're not the one that perpetrated the offense.

{¶ 19} "That's what defenses are. They're available to anybody. Anybody can raise—he could have raised not guilty by reason of insanity if he chose to do that. So defenses are out there and available. The question is whether or not they would be successful at trial.

{¶ 20} "Mr. Heath indicated or testified today that what he conveyed to the defendant or his understanding of what he conveyed to the defendant was that advancing that defense would not be successful.

{¶ 21} "And I find that explanation to be credible in light of the facts * * *.

{¶ 22} "So given all those facts, it's hard for me to believe that the defendant would be successful at a jury trial on the first element of self-defense; and that is that the defendant was not at fault in creating the situation giving rise to the affray.

{¶ 23} "I think all these factors show that he was at some fault in creating that situation. The law isn't that the defendant has to be totally responsible for the situation. It's that he was at fault in creating the situation.

{¶ 24} "Now, certainly the other individuals there were at fault, probably more at fault because they had a scheme to rob the defendant; but they've been punished for their offenses, but this defendant didn't have clean hands. He was at fault as well for creating the situation. He was there to engage in a felony drug transaction with a loaded firearm that he wasn't supposed to have.

{¶ 25} "So in looking at the evidence—the explanation that Mr. Heath has given, the understanding that the defendant had, it is the defendant's burden to prove or to establish the existence of a manifest injustice; and because I find Mr. Heath's explanation to be a credible one, I find that the defendant has not met the burden of proving a manifest injustice. * * * "

{¶ 26} We find several problems with the trial court's ruling.

{¶ 27} First, we are of the view that the trial court overestimates the average defendant's knowledge of the law, especially when faced with evidence that the defendant's attorney gave him a different appraisal of the law. Whether the defendant "knew" he could "get on the witness stand" and testify in support of the elements of self-defense was precisely the issue the court was charged to determine in our remand. While one's legal rights and the elements of crimes and defenses may be common knowledge to attorneys, we do not assume that every defendant is aware of these facts. Indeed, many safeguards are built into our legal processes on the assumption that defendants do NOT intuitively know these facts. Thus, we are troubled by the trial court's lengthy discussion of what

"everybody" and "anybody" readily knows about the availability of a self-defense claim and the rights inherent in the trial process. In our view, the court overstated the simplicity of these issues and the level of knowledge that a defendant is presumed to have, especially when an attorney has allegedly provided conflicting information.

{¶ 28} Second, we have expressly rejected the trial court's view that Turner's involvement in criminal activity at the time of the alleged attack precluded a claim of self-defense. The first prong of a claim of self-defense—that the defendant was not at fault in creating the situation giving rise to the affray—does not preclude the defense if the defendant was engaged in criminal conduct when he was attacked. Rather, it requires a defendant to show that he was not at fault in creating the situation, i.e., that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack. *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, ¶ 17. As we said in *Turner I*, "[t]hat Turner was engaged in other criminal conduct when he caused the victim's death is immaterial, so long as his criminal conduct did not give rise to the affray and he was not the first aggressor." *Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708, at ¶ 25. We have also expressly rejected the view that possession of a firearm rises to a level of wrongdoing such that reasonable persons could not doubt the defendant's criminal liability. *Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, at ¶ 18. Thus, the trial court abused its discretion in relying on Turner's "unclean hands" in overruling the motion when there was no evidence to suggest that Turner provoked the attack.

{¶ 29} On the whole, the trial court seems to have relied on improper or irrelevant factors in overruling Turner's motion to withdraw his plea. The court made only a passing reference to the witnesses' credibility. The court expressly found that when Turner entered his guilty plea, he knew that self-defense was available to him as a defense and that Heath merely told him that his claiming self-defense would not be successful. While we are deferential to the findings of a trial court, we are not bound by findings that are not based on credible evidence. Here, Turner and his grandmother testified unequivocally that Heath advised Turner that the defense of self-defense was not available to him. Heath did not deny that he so advised Turner, although he testified that he advised Turner that his assertion of self-defense would not be successful. His letter to Turner, however, is entirely consistent with the testimony of Turner and his grandmother: "I told you case law indicates to me that, since you were in the act of committing a crime when the shooting occurred, the defense of self-defense was not available to you." In other words, we are not confident, based on

Heath's testimony, that his conversations with Turner about the availability of a self-defense claim were more accurate than what he put in his letter.

{¶ 30} Turner presented substantial evidence that incorrect information from his attorney created a manifest injustice by persuading him to plead guilty rather than to pursue a viable defense. Of course, there is no guarantee that Turner's claim of self-defense will succeed at trial, and he will run the risk of a more severe penalty if he does not succeed. However, justice requires that he be allowed to make an informed choice in this matter.

{¶ 31} The assignments of error are sustained.

{¶ 32} This case is remanded to the trial court with specific direction to the trial court: (1) to permit Turner to withdraw his guilty plea to voluntary manslaughter with a firearm specification, (2) to vacate the conviction and sentence entered pursuant to that guilty plea, and (3) for further proceedings in accordance with the law.

Judgment accordingly.

GRADY and DONOVAN, JJ., concur.