NOT RECOMMENDED FOR PUBLICATION

File Name:  14a0654n.06

No. 13-3708

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT S. COMER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE SOUTHERN** |
| WARDEN OHIO STATE | ) | **DISTRICT OF OHIO** |
| PENITENTIARY, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:  SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Petitioner-Appellant Robert S. Comer ("Petitioner") appeals the order of the district court dismissing his habeas petition. We AFFIRM.

**I.**

The following facts are taken from the state court of appeals opinion and adopted by the district court:

On the evening of December 1, 2009, a number of people came together at the Lennex home on Shaffer Road in a part of Gallia County that borders right on Jackson County. Gathered at the Lennex home that evening, in anticipation of deer hunting the next day, were Edith Lennex, her sons Dustin and Cody, and Dustin's two children Aaleyah and Dominic.  Also, Kristen Gandee, a family friend, had driven from Columbus with Alfred Bury and Joe Wheeler. At some point appellant, a next-door neighbor, visited the home.

The evidence adduced at trial was replete with references that described appellant and the Lennex brothers as good friends, or even "best" friends.FN1

FN1. Kristen Gandee described appellant's and Dustin Lennex's relationship as being "like brothers."

At approximately 9:00 PM, Gandee and a few others went to McDonald's to purchase food for themselves and others at the Lennex home. Upon their return, Cody Lennex and Joe Wheeler took approximately twenty cheeseburgers into the home while Gandee and Bury stayed in the car and talked. Inside the Lennex home, some of the younger members of the crowd were "rapping" to a Karaoke machine. Appellant supposedly "rapped" something of a sexual nature about Cody's girlfriend that promptly led to a fight. Both Edith and Dustin Lennex intervened to stop the fight between appellant and Cody.

Appellant stormed out of the Lennex home and slammed a screen door behind him. That screen door was apparently damaged and an angry Dustin Lennex pursued appellant into the yard. Appellant went to his home but, rather than follow him, Gandee motioned Dustin to her car and asked if anything had transpired that should worry her. Dustin answered in the negative and assured her that "we do this all the time."

In the meantime, appellant entered his home in a rage—"put his fist in the wall" and overturned a coffee table. His cousin, Todd Dixon, was in the room attempting to text his father and heard appellant scream that he was going to shoot "them MF'ers." Appellant grabbed a weapon, went outside and fired a "warning shot" into the air. Cody Lennex had already gone outside with his rifle and positioned himself to see the front door of appellant's home. Cody warned appellant that if he fired another shot, Cody would shoot him. Appellant then fired in Cody's direction. Cody returned fire and grazed appellant's "butt cheek." He also, apparently, wounded Todd Dixon as well. FN2

FN2. The record indicates that Todd Dixon was not at the Lennex home that evening and was not involved in the fracas that took place. He explained he has not been to his cousins' place since the shooting and declared he "won't [ever] return."

At this point, Dustin Lennex re-inserted himself into the fracas and began to walk toward appellant's home. The evidence adduced at trial shows that Dustin was unarmed, approached appellant's house trailer with his arms extended out on each side and asked him if appellant was going "going to shoot a motherfucker ." FN3 Apparently, appellant was prepared to do just that. He went to his home and shut the door. When Dustin stepped on appellant's porch, appellant fired a shot at him from the home's interior. Although some witnesses testified that they could hear Dustin gasping for air, the Gallia County Coroner, as well as the assistant Deputy Coroner of Montgomery County who performed the autopsy, explained that shrapnel from the gunshot pierced the victim's aorta and he died very quickly thereafter.FN4

FN3. We quote Kristen Gandee at this point, but Cody Lennex testified that his brother simply said "shoot me MF'er."

FN4. Dr. Dan Whitley, the Gallia County Coroner, and Dr. Kent Harshbarger, Deputy Montgomery County Coroner, both confirmed that the alcohol content in Dustin

Lennex's blood exceeded the legal limit. Lennex also had "THC" in his bloodstream, which indicated that he had used marijuana.

The Gallia County Grand Jury returned an indictment that charged appellant with murder. At his jury trial appellant agreed that he and the Lennex brothers are friends, but stated that his cousin (Todd Dixon) lied about his reaction when he returned to the family house trailer. Appellant also denied that he intended to shoot to kill anyone and that he most certainly did not want "Dustin to die." Appellant explained that he shot his friend because he and his cousin had already been shot and that he feared for his life.

The jury returned a verdict of guilty with a firearm specification. The trial court sentenced appellant to serve an indefinite term of imprisonment of fifteen years to life on the murder charge, together with a three year term on the firearm specification, each to be served consecutively to one another. Although no immediate appeal was taken, this Court granted appellant leave to file delayed appeal and the matter is properly before us for review.

*State v. Comer*, No. 10CA15, 2012 WL 1831167, at *1-2 (Ohio Ct. App. 2012).

In that appeal, brought by different counsel, Petitioner presented four issues: (1) that his due process rights were violated because the evidence was insufficient to convict him of murder with a firearm specification, (2) that his due process rights were violated because the trial court failed to give a proper self-defense instruction in accordance with Ohio Rev. Code § 2901.05, (3) that his due process rights were violated because the trial court failed to give an augmented Castle Doctrine jury instruction pursuant to Ohio Rev. Code § 2901.09, and (4) that his Sixth Amendment rights were violated because trial counsel provided ineffective assistance. The Ohio Court of Appeals found no merit to any of Petitioner's assignments of error and affirmed the judgment of the trial court.

The Ohio Supreme Court denied leave to appeal and dismissed it as not involving any substantial constitutional question.

Petitioner filed this federal petition for a writ of habeas corpus, asserting in relevant part that the Ohio Court of Appeals unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it ruled that defense counsel's performance was effective. The district court held

3

that Petitioner's claims did not warrant federal habeas corpus relief. The court granted Petitioner a certificate of appealability on the issue of whether Petitioner was denied effective assistance of counsel.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief on a claim "adjudicated on the merits" in state court only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In applying these principles, we are reminded that "this standard is difficult to meet," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 780, 786 (2011). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Federal habeas corpus relief is not available for errors of state law; a federal habeas court is limited to deciding whether a conviction violated the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner alleges that trial counsel was ineffective for failing to (1) make a proper Crim. R. 29 motion for judgment of acquittal, (2) object to the trial court's improper jury instruction as it related to Ohio Rev. Code § 2901.05(B), (3) request a no-duty-to-retreat instruction in accordance with Ohio Rev. Code § 2901.09(B), and (4) request an instruction clarifying how the jury should determine who was at fault in creating the situation that gave rise to the death.

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance caused prejudice. *Strickland*, 466 U.S. at 687-88, 694-95. A court need not consider both prongs if an ineffective assistance of counsel claim can be resolved on one prong. *Id*. at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (internal quotation marks, and citations omitted). "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted).

All of Petitioner's assignments of error are based on his claim that he shot the victim in self-defense. Petitioner acknowledged in his brief and at oral argument that his claim of ineffective assistance of counsel is premised solely on state law and state rules, *Reply Br.* at 2, but asserts that given Ohio's law on self-defense, the appellate court's conclusion that his counsel provided effective representation is an entirely unreasonable application of *Strickland*.

5

We therefore begin with a review of Ohio's law on self-defense, as summarized by the Ohio State Court of Appeals:

> Self-defense is an affirmative defense that must be proven by a preponderance of the evidence. R.C. 2901.05(A); *State v. Clark*, Fulton App. No. No. F–10–025, 2011–Ohio–6310, at ¶ 21; *State v. Warmus*, Cuyahoga App. No. 96026, 2011–Ohio–5827, at ¶ 8. To prove self-defense, an accused must show three elements: (1) that the defendant was not at fault in creating the violent situation, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat. *See State v. Goff*, 128 Ohio St.3d 169, 942 N.E.2d 1075, 2010–Ohio–6317, at ¶ 36; *State v. Thomas* (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339.
>
> This duty of retreat, however, does not apply to one's own home. The maxim that a man's home is "his castle" has deep roots in English law. 4 Blackstone, Commentaries on the Laws of England (Rev. Ed.1979) 223, Chapter 16. That maxim has long been a cherished part of American law as well. *See e.g. State v. Batchelder* (N.H.Super.Ct.1832), 5 N.H. 549; *Snowden v. Warder* (PA.1831), 3 Rawle 101; *State v. Norris* (N.C.Super.Ct.1796), 2 N .C. 429. It is also a bulwark of Ohio law. *See e.g. State v. Smith* (1997), 80 Ohio St.3d 89, 110, 684 N.E.2d 668; *State v. Thomas* (1997), 77 Ohio St.3d 323, 327, 673 N.E.2d 1339.
>
> The Ohio General Assembly has codified the castle doctrine in R.C. 2901.09(B). The statute states, inter alia, that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense." Ohio courts have also extended the definition of "residence" to an attached porch. *See State v. Nappier* (1995), 105 Ohio App.3d 713, 721, 664 N.E.2d 1330; *State v. Cole* (Jan. 22, 1997), Hamilton App. No. C–950900; *State v. Copeland* (Apr. 13, 1993), Franklin App. No. 92AP–1486.

*Comer*, 2012 WL 1831167, at *2-3.

Section 2901.05(B)(1) creates a rebuttable presumption that a person acts in self-defense "when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force."

## III.

The Ohio Court of Appeals found no prejudice under *Strickland* because it found that a self-defense instruction is warranted only if the defendant was not at fault in creating the situation, and "[i]t appear[ed] that [Petitioner] created the deadly situation, or at least seriously escalated it, and was not entitled to a self-defense, or "Castle Doctrine" instruction." *Id.* *4. *See also id.* at *5 (holding that it was "questionable whether a self-defense instruction was warranted under the facts and circumstances of this case"). It determined that none of the individual errors rendered Petitioner's trial proceeding fundamentally unfair.

Our task on habeas review is *not* to determine whether there is a reasonable probability that but for his trial attorney's failings, the outcome of Petitioner's trial likely would have been different. Rather, our inquiry is whether the Ohio Court of Appeals' answer to that question was an unreasonable application of *Strickland*.

## A.

First, Petitioner contends that trial counsel should have moved for an acquittal on the ground that the evidence at trial established that his presumption of self-defense from within his own home was unrebutted, rendering the prosecution's evidence insufficient. The Ohio Court of Appeals rejected this argument, relying on Ohio Supreme Court precedent stating that proof of an affirmative defense does not detract from proof that an accused committed a crime beyond a reasonable doubt. *See State v. Hancock*, 840 N.E.2d 1032, 1043 (Ohio 2006) (relying on this court's holding in *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). To the extent that this ruling is a state court's interpretation of state law, it is binding on a federal court sitting in habeas. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *Estelle*, 502 U.S. at 67-68.

Yet we are asked to consider the issue from a constitutional perspective. That is, we must determine whether there was sufficient evidence of self-defense to refute the murder charge, such

7

that trial counsel was ineffective for failing to move for acquittal on this basis was ineffective assistance of counsel. Petitioner does not dispute the state court's findings of fact, but cites additional facts he asserts established that he acted in self-defense and was therefore entitled to an acquittal on that basis. Specifically, he notes that all of the witnesses agreed that Petitioner retreated into his house after he was shot, that Dustin Lennex ran up onto Petitioner's porch, and that Petitioner was inside his home when he shot Dustin Lennex. Further, Cody Lennex testified that he thought Dustin Lennex was going to beat up Petitioner when he saw Dustin Lennex running toward the door of Petitioner's house and that Dustin Lennex was angry at the time.

However, other undisputed facts support the conclusion that Petitioner was at fault in creating the deadly situation and therefore not entitled to the rebuttable presumption of self-defense. As detailed by the magistrate judge (and adopted by the district court), additional facts in the record support the Ohio Court of Appeals' conclusions regarding Petitioner's role in the offense and the Ohio Court of Appeals conclusion that he was not entitled to a jury instruction or judgment of acquittal on the basis of self-defense:

> It was Petitioner himself who testified that the initial fracas was over when he left the Lennex home and returned to his home. *Trial Transcript*, PageID #1231-32. Cody Lennex did not follow Petitioner outside, PageID #504, and Dustin Lennex did not follow Petitioner at that time. PageID# 1233. Petitioner returned to his home, loaded his gun, went outside and fired into the air. PageID # 1241-43. He did this while looking at Dustin Lennex who was approximately ten to fifteen feet away. *Id.* Todd Dixon testified that, when Petitioner returned to his residence to get his gun, he was cursing, he punched the wall, and he stated that he was going to shoot "those m—f-ers" PageID #472. Although Petitioner denied firing a second shot before going back inside his home, other witnesses testified that he fired a second shot and five spent yellow shell casings were taken from the scene of the crime. PageID # 1283. Cody Lennex, who described himself as Petitioner's best friend, took his gun outside after Petitioner fired into the air and warned Petitioner that he would shoot if Petitioner fired again. PageID #966. Petitioner ran back to his home, shooting as he re-entered the residence. *Id.* at 959, 966. Dustin Lennex was standing approximately fifteen feet from Petitioner at the time. PageID # 960. Cody then shot at Petitioner. Dustin Lennex ran to the front porch of Petitioner's home, taunting Petitioner to shoot him. PageID

8

#967. Dustin had his arms out, palms upward, when Petitioner shot and killed him. PageID # 968. There was no testimony at trial that the victim was attempting to enter Petitioner's home at the time he was shot. To the contrary, [Petitioner] testified that Dustin Lennex was three or four feet from Petitioner's front door when he fired but, on cross examination, he acknowledged that he never saw the victim touch the front door. PageID #1271, 1278. Cody Lennex testified that Petitioner fired at him yet again after shooting Dustin. PageID # 968. There was uncontroverted evidence that Dustin Lennex was unarmed.

ID# 1727. Petitioner did not object to these factual findings in the district court and does not take issue with them on appeal either.

Based on these undisputed facts, we cannot say that the Ohio Court of Appeals' finding that "the evidence adduced at trial was uncontroverted that [Petitioner] fired the first shot in this fracas," *Comer,* 2012 WL 1831167, at *4, and that he created the deadly situation and thus did not act in self-defense, was unreasonable. Thus, we cannot say that its determination that Petitioner was not prejudiced by any alleged failure to move for acquittal on the basis of self-defense was objectively unreasonable.

Petitioner asks us to view this case from a different perspective—namely as "a complex series of events" unfolding "in three different locations" with "different aggressors." But that is not the proper role of a habeas court. Our job is to determine whether the Ohio Court of Appeals' conclusion was an objectively unreasonable application of clearly established federal law. Upon our review of the entire factual record, we conclude that it was not.

**B.**

Petitioner complains that the jury instructions related to Ohio Rev. Code Ann. § 2901.05 were unclear and inaccurately implied that Petitioner had a duty to retreat, and that counsel was ineffective for failing to object to these instructions. Petitioner claims confusion because, directly after explaining the self-defense presumption as permitted by Ohio Rev. Code Ann.

9

§ 2901.05, the trial court informed the jury that Petitioner had a duty to retreat even in his own home, which is not an accurate statement of the law.

The jury was instructed as follows:

"Now the defendant claims to have acted in self-defense. To establish a claim of self defense the defendant must prove by the greater weight of the evidence that A: He was not at fault in creating the situation giving rise to the death and B: He had reasonable grounds to believe and an honest belief even if mistaken that [sic] was in imminent or immediate danger of great [sic], or death or great bodily harm and that his only means of retreat, escape or withdrawal from such danger was by the use of force and C: He had not violated any duty to retreat, escape or withdraw to avoid the danger. *Now the defendant is presumed to have acted in self-defense or defense* of another when using defensive force that was intended or likely to cause death or great bodily harm to another *if the person against whom the defensive force was used was in the process of entering or had entered unlawfully and without privilege to do so the residence occupied by the defendant.* Now the claims the presumption that the defendant acted in self defense or defense of another when using defensive force that was intended or likely to cause death or great bodily harm to another does not apply. * * * Now dwelling means a building of any kind. . . A building includes but is not limited to an attached porch . . . *Now the defendant had a duty to retreat.* If the, if he A: was at fault in creating the situation giving rise to the death or B: did not have a reasonable ground, or did not have grounds to believe and an honest belief that he was imminent or immediate danger of death or great bodily harm. . ." (Emphasis added.)

*Comer*, 2012 WL 1831167, at *4.

In rejecting Petitioner's argument, the Ohio Court of Appeals reasoned that:

This excerpt spans approximately two pages of the trial transcript. Although we agree that the language may be a bit confusing, we are not convinced that it constitutes prejudicial error and we certainly do not believe that rises to the level of plain error. Our understanding of appellant's argument is that he objects to the third underlinled [sic] portion of the above excerpt stating that he "had a duty to retreat."

FN5 Had that instruction included a qualifier stating that appellant was outside his home at the time, then it would have been a correct statement of the law. At the same time, had it included a qualifier that appellant was inside his home, it was erroneous. Did the instruction constitute error without either qualifier? We think not for the following reasons. FN5. It is, of course, possible that the trial court's court reporter mistakenly inserted a period rather than simply omitting any punctuation mark and continuing the sentence. Transcribed conversations may

10

not always correctly illustrate a speaker's inflections or intent in linking words and phrases.

First, a trial court's jury instructions must be considered in their totality. *State v. Rodriguez*, Wood App. No. WD–08–011, 2009–Ohio–4059, at ¶ 31; *State v. Doyle*, Pickaway App. No. 04CA23, 2005–Ohio–4072, at ¶ 50. Second, the first two italicized portions of the jury instructions are correct statements of the law and directed the jury that appellant was presumed to have acted in self-defense if the victim had unlawfully entered the premises (including the porch of the trailer). In light of the trial court's correct statement of the law, balanced against the somewhat confusing, but not necessarily incorrect, statement of the law, we are not persuaded that plain error exists.FN6 This is particularly true in light of our discussion that it is questionable whether a self-defense instruction was warranted under the facts and circumstances of this case.

FN6. In view of appellant's own testimony, it appears that the confrontation was over when he returned to his house trailer and that it escalated into a deadly confrontation only when he exited his house trailer and fired a warning shot into the air.

*Comer*, 2012 WL 1831167, at *5.

To establish that flawed instructions constituted a due process violation, "the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citations omitted).

Viewing the jury instructions "in their totality," *see Sarausad,* 555 U.S. at 191, the Ohio Court of Appeals found that despite some confusing language, the jury instructions as a whole were a correct statement of the law. Furthermore, Petitioner actually benefitted from the instructions, since it was not likely that he was entitled to a self-defense instruction given that he himself escalated the confrontation to a deadly encounter when he exited the house and fired a warning shot. Thus, the Ohio Court of Appeals' conclusion that Petitioner was not prejudiced by counsel's failure to object to allegedly faulty instructions was not an unreasonable application of *Strickland. See Sarausad,* 555 U.S. at 190-91 (holding that even if instruction was ambiguous, it

11

was not a constitutional violation because there was no reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden to prove every element of the crime beyond a reasonable doubt); *Bagby v. Sowders,* 894 F.2d 792, 795 (6th Cir. 1990) (en banc) holding that the state court's holding that a lesser included instruction was not warranted by the evidence was an application of state law and not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice).

### C. Duty-to-Retreat Instruction

Petitioner claims that counsel was ineffective for failing to request a jury instruction regarding the no-retreat doctrine. Petitioner points out that separate from the Castle Doctrine, (codified at Ohio Rev. Code Ann § 2901.05), Ohio Rev. Code Ann. § 2901.09(B) provided him with the separate statutory protection that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence . . . ." Petitioner acknowledges that the trial court provided an instruction on the Castle Doctrine, but argues it was deficient, so counsel should have requested an instruction on this separate statutory defense, especially since it is more favorable than the Castle Doctrine, which required the individual upon whom force is used to be in the process of entering the defendant's home, whereas the no-retreat doctrine requires merely that the defendant is in his own home when he feels force is necessary to defend himself.

The state court of appeals saw "little difference" between this argument and Petitioner's argument regarding the allegedly faulty jury instructions and rejected it for the same reasons. The court "agree[d] . . . that the trial court's stray comment that [Petitioner] had a 'duty to retreat' may or may not have been misleading to the jury. However, we are not persuaded that but for the absence of an augmented instruction, the outcome of the trial would have been otherwise." *Comer*, 2012 WL 1831167, at *5.

12

Again, for the reasons discussed throughout this opinion, we find that the Ohio Court of Appeals' conclusion that alleged error did not amount to prejudice under *Strickland* was not an unreasonable application of that federal law.

### D. Fault Instruction[1]

Petitioner argues that "[b]ecause of the complex back-and-forth of the fight, trial counsel should have requested that the court clearly explain to the jury that the first element of common-law self-defense does not require a showing that the defendant played "no part" in creating the situation, but rather that it required a defendant to show that he was not "at fault" in creating the affray, citing *State v. Gillespie*, 874 N.E.2d 870, 874 (Ohio Ct. App. 2007) ("The first prong of the test for self-defense . . . that a defendant was not at fault in creating the situation giving rise to the affray, does not require a showing that he played no part in it.")[2]. Petitioner argues that trial counsel's failure to request this instruction was compounded by the State's closing argument, which focused on who was at fault in starting the affray and claimed that Petitioner started the whole fight by rapping something disrespectful to Cody. Petitioner acknowledges that defense counsel's closing argument stated that Petitioner did not create the incident that led to the death of Dustin Lennex, but claims that counsel failed to tell the jury that even if he played a part in creating the situation, that fact alone did not preclude the jury from finding that he still met his burden of proof for meeting the first element of the common-law self-defense doctrine. Petitioner adds that the situation was exacerbated by the trial court's jury instruction that in order to find that Petitioner had reasonable grounds to believe that he was in imminent danger of death or great bodily harm, the jury could consider only Dustin Lennex's conduct. Thus, the jurors

---

[1] It does not appear that the Ohio Court of Appeals addressed this issue in its opinion. However, the Warden raises no objection and notes in its brief that this issue was presented in Comer's Petition, R.2 ID# 18.

13

could have believed that they could consider only Dustin Lennex's conduct when determining who was at fault in creating the situation.

Because there is factual support in the record for the state appellate court's conclusion that that Petitioner fired the first shot after he retreated to his home and "created the deadly situation, or at least seriously escalated it," such that he was not entitled to a self-defense or "Castle Doctrine" instruction, the state appellate court's holding that counsel's failure to request a no-fault instruction did not amount to prejudice under *Strickland* is not objectively unreasonable.

## IV.

Applying "double deference" to this record, *see Premo*, 131 S. Ct. at 740, we cannot say that the Ohio Court of Appeals' ruling on Petitioner's Sixth Amendment claim "was so lacking in justification" that it amounted to an unreasonable application of *Strickland*. *See Harrington*, 131 S. Ct. at 786-87. For the foregoing reasons, the judgment of the district court dismissing Petitioner's habeas petition is **AFFIRMED.**

---

[2] In *Gillespie,* the Ohio Court of Appeals held that the trial court abused its discretion when it refused to give the self-defense instruction defendant requested where the defendant did not brandish a shotgun, did not make threatening remarks, and claimed that he only fired his gun after the victim attacked him with a knife, calling into question the defendant's criminal liability. *See Gillespie*, 84 N.E. 2d at 875. However, in the instant case, the Petitioner created, or at the very least escalated a deadly situation, and there is no evidence that Lennex had any weapon or made any threat to the Petitioner before the Petitioner shot him.

14