[Cite as *State v. Stevenson*, 2018-Ohio-5140.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-512 |
| v. | : | (C.P.C. No. 16CR-1095) |
| Shante L. Stevenson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

## D E C I S I O N

### Rendered on December 20, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee. **Argued:** *Valerie Swanson*.

**On brief:** *Yeura Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued:** *John W. Keeling*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Shante L. Stevenson, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of having weapons while under disability, in violation of R.C. 2923.13, and murder, in violation of R.C. 2903.02, with the accompanying firearm specification. The trial court also found Stevenson guilty of the repeat violent offender ("RVO") specification. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2}   On February 26, 2016, a Franklin County Grand Jury indicted Stevenson with two counts of murder in violation of R.C. 2903.02, unspecified felonies, and one count of having weapons while under disability in violation of R.C. 2923.13, a felony of the third degree.  The murder counts had two specifications attached to them: a three-year firearm specification, pursuant to R.C. 2941.145(A) and a RVO specification, pursuant to R.C. 2941.149(A).  The charges arose out of the shooting death of Marty Blair on January 30, 2016.  Stevenson entered a not guilty plea and proceeded to a jury trial.

{¶ 3}   At the trial, the state elicited testimony from Garret White and Christopher Lofton as to the events leading up to the shooting.  On January 30, 2016, White and Lofton were watching sports on television.  They decided they wanted to smoke some marijuana and unsuccessfully tried to reach their regular "weedman," Lavonn Stillwell.  White then called Stevenson.  Stevenson indicated he knew where to get some marijuana, and White and Lofton went to pick up Stevenson.  The three ultimately ended up at a corner store on the east side of Columbus.  Lofton and Stevenson exited the vehicle while White stayed in the driver's seat of the car.  Neither White nor Lofton could describe the man with whom Stevenson talked.  When Lofton and Stevenson got back into the car, Stevenson indicated that White should follow the car pulling out of the parking lot.

{¶ 4}   The car eventually turned into a driveway off East Mound Street.  White did a U-turn and parked on the street next to the house.  Stevenson exited the vehicle and followed a man into the residence.  According to White and Lofton, they remained in the vehicle and listened to music.  Stevenson returned a couple of minutes later and told White to drive away.  When asked about the marijuana, Stevenson told them to "F*** the weed." Lofton stated that Stevenson was acting urgent, and White described it as "loud."  White testified he was going to complain but then noticed that Stevenson was holding a gun. White dropped Stevenson off, and then he and Lofton returned to White's residence.

{¶ 5}   White and Lofton watched more television and then the news came on.  They saw a story about an incident on the eastside of Columbus.  White realized that was where they had been.  White testified he told his boss the next day what happened.  His boss urged him to talk with the police and eventually drove White to the police station.  White arranged for the police to talk with Lofton and Stillwell.

{¶ 6}    Stillwell stated he had met Stevenson through White.  He testified Stevenson called him late at night and asked him if he wanted to buy a 9mm gun.  There was some discussion of the gun being "hot."  Stillwell stated that he later talked with White and learned what happened.  He said that he also urged White to go to the police.

{¶ 7}    The state also called Blair's live-in girlfriend, Regina Reid.  Reid testified that she and Blair had dinner at home on January 30, 2016.  After their meal, Blair left to go to the store to check the lottery numbers.  She stated she was in the upstairs bathroom when she heard a car pull up.  Reid indicated she heard Blair's keys and the door open and close.  Then she heard a bang.  She called for Blair and immediately went downstairs.  Reid testified that as she entered the kitchen she saw Blair's feet coming from behind the island.  Reid then noticed a man standing by the backdoor.  He looked at her and ran out of the backdoor.  Reid identified Stevenson as the person in her kitchen.

{¶ 8}    Officer Raines responded to the 911 call.  He stated he and his partner entered through the front door and went into the living room where they encountered Reid.  They proceeded into the kitchen and saw Blair lying in a large pool of blood with a revolver on the ground near his head.  There was no sign of a struggle.

{¶ 9}    Officer Bair from the crime scene search unit testified that he took the crime scene photos that were admitted into evidence.  He stated that the revolver on the kitchen floor had all five of its rounds so it was determined that the gun had not been fired.  A 9mm casing was located on the stove top along the west wall of the kitchen, and a bullet was recovered from the north wall of the kitchen.

{¶ 10}  A deputy coroner testified about the autopsy report.  He stated that the cause of death was a perforating gunshot wound to the head.  The bullet entered the left side of the face between the cheek and ear.  It traveled through the nasal pharynx area and exited the right ear.  The coroner explained that when a gun is fired, flame, dirt, and gunpowder are emitted along with the bullet.  If the muzzle of the gun is in close contact with the skin, it can cause an abrasion and the flame will sear the skin.  If the gun is a couple of inches away, soot or dirt will settle on the skin.  Gunpowder will cause little pinpoint abrasions called stippling if the gun is fired within 18 inches (on average) of the skin.  In this case, the deputy coroner testified that there were no abrasions, searing, soot, or stippling on the skin near the entry wound.  He stated that the gun was therefore fired at an indeterminate range.

He described it as a classic, noncontact entrance wound. The coroner further testified that there were no wounds to Blair's hands but there was a small red discoloration on the right forearm. There were abrasions three to four inches from the top of Blair's head on the left side. The coroner indicated that these are consistent with someone striking his head while falling forward without an attempt to break the fall.

{¶ 11} Stevenson testified on his own behalf. His testimony is consistent with that of White and Lofton with a few exceptions. He stated that when he agreed to get some marijuana for White, White told him to bring his gun. According to Stevenson, he showed the gun to White and Lofton when he got into the car and both of them handled it. Stevenson identified Blair as the man at the corner store who told Stevenson to follow him. When they got to Blair's house, White cocked the gun and gave it to Stevenson. Stevenson put the gun in his front pants pocket and exited the vehicle. Stevenson said that Lofton also exited the car but Blair indicated that only Stevenson should come. Therefore, Lofton got back in the vehicle.

{¶ 12} Stevenson said that when he entered the kitchen through the backdoor he had the money in his hand. Blair ordered White to give him the money but White refused stating that he wanted to see what he was buying. According to Stevenson, Blair then attempted to grab the money from his hand. At the same time, Blair reached for his hip area and pulled out a gun. Stevenson grabbed Blair's right arm with his left hand. They struggled and went from the doorway into the corner of the kitchen by the sink. Stevenson was able to free the money from Blair's grasp and put it into his back pocket. He then reached into his front pocket for his gun. He testified that he told Blair to get back but that Blair grabbed the front of his shirt and tried to pull him forward. Stevenson then fired the gun. He testified that he did not know if Blair had been shot but that Blair's head came forward onto Stevenson's chest. Stevenson did a side step and Blair fell to the ground on his face. He denied that he saw anyone on his way out of the house.

{¶ 13} When he got back to the vehicle he asked White and Lofton if they heard anything. When they indicated that they had not, Stevenson testified that he told them what happened. He stated that he feared for his life and did not believe that he had any other choice than to shoot Blair. After Stevenson testified, the jury heard closing arguments and was given instructions by the trial court.

{¶ 14} The jury found Stevenson guilty of all three counts and the firearm specifications. The trial court issued a decision finding him guilty of the RVO specifications. The trial court merged the murder counts and sentenced Stevenson 15 years to life on Count 1 – murder with an additional consecutive 3 years for the firearm specification and an additional consecutive 6 years for the RVO specification. It also imposed a sentence of 30 months on the having weapons under disability count to be served concurrently.

## II. The Appeal

{¶ 15} Stevenson appeals his convictions and assigns the following assignments of error:

> [I.] THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S REQUEST TO INSTRUCT THE JURY ON THE LESSER OFFENSE OF VOLUNTARY MANSLAUGHTER.
>
> [II.] THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL, THE RIGHT TO PRESENT A DEFENSE, AND DUE PROCESS OF LAW WHEN THE TRIAL COURT GAVE CONFUSING AND MISLEADING INSTRUCTIONS ON THE LAW OF SELF-DEFENSE AND ALSO ERRONEOUSLY INSTRUCTED THE JURY THAT THE DEFENDANT WAS NOT ENTITLED TO USE SELF-DEFENSE IF HE HAD REASONABLE GROUNDS TO BELIEVE THAT THE ASSAILANT DID NOT INTEND TO KILL HIM.

## III. Jury Instructions

{¶ 16} In both assignments of error, Stevenson challenges the trial court's jury instructions. "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus; *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 6 (10th Dist.). The trial court has broad discretion in fashioning the jury instructions as long as it presents "a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46. Crim.R. 30(A) provides in pertinent part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. * * *

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶ 17} The record reveals that prior to the state resting its case, the trial court provided counsel with a draft of its jury instructions. After denying defense counsel's Crim.R. 29 motion for acquittal, the trial court discussed its proposed jury instructions with counsel. At that time, defense counsel indicated that they looked good.

{¶ 18} The next morning, however, defense counsel informed the court that Stevenson wanted a jury instruction on the lesser-included offense of voluntary manslaughter. The trial court discussed with counsel where to insert that instruction into the charge and to which count it may pertain. The prosecutor expressed some concern with including an instruction on voluntary manslaughter. Defense counsel also conceded that "this argument about this charge may be premature due to the fact that it depends on what comes out in my client's testimony." (Tr. Vol. IV at 11.)

{¶ 19} After Stevenson testified, the trial court excused the jury and addressed the jury instructions. It indicated that the testimony supported a self-defense instruction, but a lesser-included-offense instruction was not warranted. Both counsel agreed with that assessment. The trial court finalized the jury instructions and stated for the record that both sides signed off on it. The trial court charged the jury and asked if either counsel had anything else to put on the record. Defense counsel renewed the Crim.R. 29 motion for acquittal but did not object to the jury instructions.

{¶ 20} Pursuant to Crim.R. 30(A), a party is required to object to a jury instruction after the instruction has been given but before the jury retires in order to raise the issue on appeal. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 164. Failure to object to the jury instructions waives all but plain error on appeal. *Id.* at ¶ 165; *State v. Long*, 53 Ohio St.2d 91 (1978). Plain error is an obvious error that affects a substantial right. Crim.R. 52(B); *State v. Yarbrough*, 95 Ohio St.3d 227, 244 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Long* at paragraph three of the syllabus.

An error in a jury instruction does not constitute a plain error unless, but for the error, the outcome of the trial clear would have been otherwise. *Id.* at paragraph two of the syllabus.

### A.  First Assignment – Voluntary Manslaughter Instruction

{¶ 21}  In his first assignment of error, Stevenson contends that the trial court erred when it denied his request to instruct the jury on the lesser-included offense of voluntary manslaughter.  He argues that the jury could have rejected his claim of self-defense but still found that a conviction for voluntary manslaughter was appropriate because Blair provoked him by pulling a gun and attempting to rob him.

{¶ 22}  To begin with, Stevenson claims he requested a jury instruction on voluntary manslaughter.  We disagree.  As discussed above, when the trial court and counsel went over the jury instructions, defense counsel agreed that the request was premature until Stevenson testified.  Following his testimony, defense counsel did not request a jury instruction on voluntary manslaughter.  To the contrary, she agreed that the instruction was not warranted.  Thus, we will review this assignment of error under the plain error standard.

{¶ 23}  Voluntary manslaughter is considered an inferior degree of murder.  *State v. Shane*, 63 Ohio St.3d 630, 632 (1992).  The voluntary manslaughter statute provides "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." R.C. 2903.03(A).  Before a defendant is entitled to a jury instruction on voluntary manslaughter, the trial judge must determine whether the defendant presented evidence of reasonably sufficient provocation occasioned by the victim to warrant such an instruction. *Shane* at paragraph one of syllabus.

{¶ 24}  The provocation element consists of both an objective and subjective component.  *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 283.  For the objective component, there must be evidence of provocation that was "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane* at 635. The subjective factor requires that the defendant, in the case at issue, was actually under the influence of sudden passion or in a sudden fit of rage.  *Id.* at 634.  The defendant on

trial for murder must establish the elements of R.C. 2903.03(A) by a preponderance of the evidence. *State v. Rhodes*, 63 Ohio St.3d 613, 620 (1992).

{¶ 25} Here, there is no evidence in the record that Stevenson acted under a sudden passion or fit of rage. During his testimony, Stevenson never stated that he was so provoked or enraged by Blair that he could not control himself. Instead, he testified that he shot Blair because he thought Blair was going to shoot him. He felt that he had no other choice and feared for his life.

{¶ 26} Stevenson notes that sudden passion is not defined in the statute. He argues that passion is a strong emotion or intense feeling and that a person can experience intense feelings of hate, love, and fear. Stevenson relies on this court's previous decision in *State v. Roddy*, 10th Dist. No. 81AP-499 (Nov. 17, 1981) as support for the proposition that the same evidence used to prove a defendant's self-defense claim is also proof of serious provocation by the victim reasonably sufficient to incite the defendant into using deadly force.

{¶ 27} This court has previously explained on at least two occasions why reliance on *Roddy* is misplaced. *See State v. Harris*, 129 Ohio App.3d 527 (10th Dist.1998); *State v. Caldwell*, 10th Dist. No. 98AP-165 (Dec. 17, 1998). In *Roddy*, the defendant admitted to killing the victim during a bar fight but argued that it was self-defense. The jury found the defendant not guilty of murder, but found him guilty of voluntary manslaughter, rejecting the defendant's claim of self-defense. On appeal, the defendant contended that his conviction for voluntary manslaughter was against the manifest weight of the evidence and contrary to law. We disagreed. At the time that *Roddy* was decided, voluntary manslaughter was defined as knowingly causing the death of another while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite the use of deadly force. Because the evidence established that the defendant was fearful of further attack from the victim and also that the defendant shot the victim while the victim was being restrained by another person, the jury's verdict was supported by the evidence.

{¶ 28} R.C. 2903.03(A), however, was amended in 1982 to limit the application of the voluntary manslaughter statute. *See* Am.Sub.H.B. No. 103, 139 Ohio Laws, Part I, 1761. Instead of extreme emotional distress, the current statute requires that the defendant be under the influence of sudden passion or in a sudden fit of rage. After that amendment, this court has held that "evidence supporting the privilege of self-defense, i.e., that the

defendant feared for his own and other's personal safety, does not constitute sudden passion or fit of rage as contemplated by the voluntary manslaughter statute." *Harris* at 535. The Supreme Court of Ohio has similarly held that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201 (1998); *see also Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 157.

{¶ 29} Because Stevenson testified that he acted out of fear rather than rage or passion, the evidence did not support a jury instruction for voluntary manslaughter. Thus, we conclude that the trial court did not commit plain error when it did not instruct the jury on voluntary manslaughter. We overrule the first assignment of error.

## B. Second Assignment – Self-Defense Instruction

{¶ 30} In his second assignment of error, Stevenson contends that the trial court's instruction on self-defense was erroneous, misleading, and confusing. He also claims that it was so generalized and inappropriate that it did not reflect the specific facts of the case. He specifically complains about the part of the self-defense instruction that provided that he was not entitled to use self-defense if he had reasonable grounds to believe that the assailant did not intend to kill him or cause him bodily harm and that the trial court failed to define what it means to be at fault in creating the situation giving rise to the affray. Stevenson also contends that the trial court should not have instructed the jury that he had a duty to avoid danger as it had no application and relevance to the facts of this case. We disagree.

{¶ 31} Stevenson did not object to the self-defense instruction nor did he offer any alternative language that the trial court rejected. As a result, "[t]he failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus.

{¶ 32} When reviewing a specific challenge to a jury instruction on appeal, the instruction should not be judged in isolation, but within the context of the overall jury charge. *State v. Price*, 60 Ohio St.2d 136 (1979), paragraph four of the syllabus; *Aleshire* at ¶ 52. If the instructions, taken in their entirety, fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility

that the jury may have been misled. *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922), paragraph six of the syllabus; *Stonerock v. Miller Bros. Paving, Inc.*, 72 Ohio App.3d 123, 134 (10th Dist.1991).

{¶ 33} The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself. *See State v. Palmer*, 10th Dist. No. 12AP-460, 2013-Ohio-5970, ¶ 12. Deadly force is " 'any force that carries a substantial risk that it will proximately result in the death of any person.' " *Id.* at ¶ 11, quoting R.C. 2901.01(A)(2). When a defendant uses a weapon or instrument against the other party and claims self-defense, a trial court usually provides a jury instruction on self-defense using deadly force. *Id.* at ¶ 16. Here, it is undisputed that Stevenson used deadly force by means of a firearm to kill Blair.

{¶ 34} To establish self-defense using deadly force, a defendant must prove by a preponderance of the evidence: (1) he was not at fault in creating the situation giving rise to the altercation; (2) he had a bona fide belief that he was in imminent danger of bodily harm and his only means of escape from such danger was the use of force; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. The elements of self-defense are cumulative. If a defendant fails to prove any one of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense. *See State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 72, citing *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶ 35} The jury instruction in the instant case correctly explained this basic standard. The trial court instructed:

> Mr. Stevenson raises the affirmative defense of self-defense to the murder charges. The burden of proving the affirmative defense of self-defense is upon the defendant. He must establish this defense by a preponderance of the evidence. "Preponderance of the evidence" is the greater weight of the evidence; that is, evidence that outweighs or overbalances in your minds the evidence opposed to it.
>
> A "preponderance" means evidence that is more probable, more persuasive, or of greater probative value. It is, again, not the number of witnesses who testify, but the quality of the evidence that must be weighed.

In determining whether self-defense has been proven by a preponderance of the evidence, you should consider all the evidence bearing upon the affirmative defense regardless of who produced it. If the weight of the evidence is equally balanced, then the defendant has failed to establish the affirmative defense of self-defense.

If the defendant fails to establish the defense of self-defense, the state still must prove to you beyond a reasonable doubt all of the elements of each murder charge before you can convict the defendant of either offense.

To establish self-defense, the defendant must prove by a preponderance of the evidence the following: No. 1, the defendant was not at fault in creating a situation giving rise to the affray. No. 2, the defendant had an honest belief that he was in imminent danger of death or great bodily harm, and this his only means of escape from such danger was in the use of such force. No. 3, Mr. Stevenson did not violate any duty to retreat or avoid danger.

If the defendant had a reasonable and honest belief that he was in imminent danger of death or great bodily harm and that the only means to escape from such danger was by killing his assailant, then he was justified even though he was mistaken as to the existence of such danger.

In determining whether the defendant had reasonable grounds for holding an honest belief that he was in imminent danger in connection with the death of Mr. Blair, you must put yourself in the position of Mr. Stevenson, with his characteristics, his knowledge, or lack of knowledge, under the circumstances and conditions that surrounded him at that time.

You must consider as well the testimony -- excuse me -- the conduct of Marty Blair, and determine if his acts or words caused the defendant to reasonably and honestly believe that he was about to be killed or receive great bodily harm.

The law does not measure nicely the degree of force which may be used to repel an assault. However, if a person who is assaulted uses more force than reasonably appears to be reasonably necessary under the circumstances, and if the force used is so grossly disproportionate to his apparent danger as to show revenge or an evil purpose to injury his assailant, then the defense of self-defense is not available.

> The defendant must establish that the other party was the aggressor, and that the defendant did not himself provoke and cause the injury. Self-defense is not available to the person who starts a fight unless, in good faith, he withdraws from the contest and informs the other party of his withdrawal, or by words and acts reasonably indicates that he has withdrawn and is no longer participating in the fight.
>
> A person is not in a position to claim self-defense if he saw trouble and came armed with a dangerous weapon, provoked a fight, or renewed a fight that had broken off, and did not attempt to avoid danger or leave the scene of the trouble.
>
> If, in the careful and proper use of his faculties, a person had reasonable grounds to believe that an assailant was unable to and does not intend to kill or do great bodily harm, then the person, having notice of his adversary's position, loses the right to use force in self-defense. If a person continues to fight thereafter, he becomes the aggressor, and a subsequent injury to another is unlawful and is not self-defense.

(Tr. Vol. IV at 123-126.)

{¶ 36} These jury instructions are substantially similar to those we reviewed in *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 8. We held that the trial court's jury instructions in *Ellis* "were precise portrayals of Ohio law on self-defense." *Id.* at ¶ 12. Therefore, to the extent that Stevenson claims that these instructions are generally erroneous, misleading, and confusing, we disagree. The self-defense instructions were a correct statement of the law. *Id.*

### 1. At Fault

{¶ 37} Stevenson attempts to show that the self-defense instructions were faulty because they did not define "at fault." He argues that the jurors could have concluded he was at fault because he elected to engage in unlawful conduct (attempting to buy marijuana) or because he carried a firearm. The "not at fault" requirement generally means that the defendant must not have been the first aggressor in the incident. *Robbins* at 80-81; *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, ¶ 24 (2d Dist.); *State v. New*, 10th Dist. No. 05AP-262, 2005-Ohio-6471, ¶ 9. A defendant is not precluded from using self-defense simply because he was engaged in criminal conduct when he was attacked. Rather, the first prong of a self-defense claim requires a defendant to show that he was not at fault in

creating the situation, meaning that he had not engaged in wrongful conduct toward his assailant that provoked the assailant to attack. *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, ¶ 17 (2d Dist.). If a defendant's criminal conduct did not give rise to the affray and he was not the first aggressor, the defendant will not be "at fault." *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, ¶ 26 (2d Dist.).

{¶ 38} Although the trial court did not instruct the jury that it was immaterial that Stevenson was involved in criminal conduct before the shooting occurred, this does not amount to plain error. The trial court did instruct the jury that the "at fault" prong of a self-defense claim was satisfied if the other person was the aggressor and the defendant did not provoke the other party. If the jury believed Stevenson's testimony that Blair attempted to rob him and pulled a gun on him, then the jury would have concluded that Stevenson was not at fault in creating a situation giving rise to the affray.

### 2. Duty to Avoid Danger

{¶ 39} Stevenson also claimed that the trial court should not have instructed the jury that he had to prove that he did not violate any duty to avoid the danger and that he did not see trouble and come armed with a dangerous weapon. He argues that a person does not forfeit the right to use self-defense if he elects to engage in certain activities, such as buying marijuana, which may become dangerous.

{¶ 40} Stevenson cites no authority to support his claim that it is erroneous or prejudicial error to instruct the jury that a defendant has a duty to avoid danger if he elects to engage in a dangerous activity. The duty to avoid danger is one element of the black letter law that must be satisfied to successfully utilize the affirmative defense of self-defense in a case where a defendant used deadly force. *Robbins* at paragraph two of the syllabus. When deadly force is used and the defendant is not in his own home, in order to prove self-defense, the defendant must show that no means of retreat or avoidance was available and that his only means of escape or avoidance was the deadly force he used. *State v. Melchior*, 56 Ohio St.2d 15 (1978). We find that Stevenson's argument is without merit.

### 3. Reasonable Belief

{¶ 41} Stevenson next argues that the trial court improperly instructed the jury that a person loses the right to act in self-defense if he had reasonable grounds to believe that the assailant did not intend to kill him or do him great bodily harm. He argues that this

statement does not correspond to the requirement that a person is justified in using deadly force if he has a reasonable belief that he is in imminent danger of death or great bodily harm. Stevenson contends that it placed a greater burden on him to establish he had no reason to believe that Blair did not intend to cause him death or great bodily harm.

{¶ 42} The trial court's instruction accurately reflects that the second prong of a self-defense claim is a combined subjective and objective test. *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). Self-defense is justified "on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." *State v. Sheets*, 115 Ohio St. 308, 310 (1926). If a defendant does not believe that he is in imminent danger of death or great bodily harm, he is not entitled to claim self-defense. We reject this argument.

### 4. Inference about Blair's Weapon

{¶ 43} Stevenson argues that it was unfair that the trial court instructed the jury that they could infer that "the purpose to cause death may be inferred from the use of a weapon" but failed to instruct the jury that they could infer that Blair intended to cause Stevenson death or great bodily harm because Blair used a gun. Because the evidence showed that Blair had a gun, Stevenson contends that this would be a fair comment by the trial court and would have helped him to satisfy his burden in proving self-defense. We disagree.

{¶ 44} Stevenson fails to accurately portray the trial court's instruction on the inference. The instruction was "[*i*]*f a wound is inflicted with a deadly weapon in a manner calculated to destroy life,* the purpose to cause death may be inferred from the use of a weapon." (Emphasis added.) (Tr. Vol. IV at 118.) There is no corresponding evidence that Blair inflicted a wound on Stevenson with a deadly weapon. Furthermore, the trial court did instruct the jury as part of the self-defense instruction that the jury must consider the conduct of Blair in determining whether Stevenson had a reasonable and honest belief that Stevenson was about to be killed or receive great bodily harm. We, therefore, find that the trial court did not commit plain error when it did not provide an instruction about an inference that could be made from Blair's possession of a gun.

{¶ 45} As Stevenson has failed to establish that the trial court committed plain error in its instruction on self-defense, the second assignment of error is overruled.

{¶ 46} For the foregoing reasons, Stevenson's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

————————