OPINION
{¶ 1} The defendant-appellant, Kevin J. Recker ("Recker"), appeals the judgment of the Putnam County Common Pleas Court finding him guilty of 25 offenses, detailed below, and sentencing him to an aggregate prison term of 23 years.
 {¶ 2} On May 11, 2005, the Putnam County Grand Jury indicted Recker on 30 charges, most of which were various theft offenses or complicity to theft offenses. The offenses included felonies of the first, third, fourth, and fifth degrees. These charges were filed in Putnam County Common Pleas Court case number 05-CR-42, which is before us as appellate case number 12-05-21. On June 29, 2005, the grand jury indicted Recker on 15 additional charges. As with the prior indictment, most of the offenses were theft offenses or complicity to theft offenses. The indictment charged felonies of the second, fourth, and fifth degrees. Specifically, the first count of the indictment charged Recker with complicity to burglary, a violation of R.C. 2923.03(A)(1), (2), and (3) and R.C. 2911.12(A)(2), a second degree felony. These charges were filed against Recker in Putnam County Common Pleas Court case number 05-CR-55, which is before us as appellate case number 12-05-22.
 {¶ 3} The complicity to burglary charge was filed after guns were stolen from Michael Schuerman's residence. Recker had instructed Todd Gerdeman to inform him when the Fort Jennings High School boys' basketball games were scheduled. Recker requested this information because he knew that Schuerman and his family regularly attended the Fort Jennings basketball games and that the team was in the regional playoffs, which would attract larger crowds to the school. On a night when one of the games was scheduled, Recker instructed Larry Dean Barton to break into the Schuermans' home to steal their guns, which he did. The Schuermans returned home to find their front door and gun cabinet broken and their guns missing.
 {¶ 4} Recker initially pled not guilty to each of the 45 counts charged against him, and the trial court subsequently consolidated the two cases. As a result of the consolidation, the 15 offenses charged in 05-CR-55 were renumbered as counts 31 through 45, and the case proceeded to jury trial on August 1, 2005. At the close of the State of Ohio's ("State") evidence, Recker indicated he would call no witnesses and made an oral Crim.R. 29 motion as to each count. (Trial Tr., Nov. 22, 2005, at 1369-1371). The trial court granted Recker's motion as to Counts 20, 21, and 22 (breaking and entering, grand theft, and receiving stolen property, respectively), but overruled the motion as to each of the remaining counts. (J. Entry, Sep. 15, 2005; Trial Tr., at 1374:14-16).
 {¶ 5} On August 5, 2005, the jury found Recker guilty on 25 counts, and not guilty on the remaining 17 counts. (Verdict, Aug. 5, 2005; J. Entry, Sep. 15, 2005). During the sentencing hearing, the trial court vacated four counts as allied offenses of similar import. The court ordered Recker to serve ten years in prison for count one, consecutive to five years for count two, consecutive to eight years for count 31, for an aggregate sentence of 23 years in prison. (J. Entry, Sep. 26, 2005). The court ordered the sentences for the remaining 17 counts to be served concurrently with the 23-year sentence. (Id.). Recker appeals the trial court's judgment and asserts the following assignments of error:
 Because the jury did not find one of the elements of second-degree felony burglary beyond a reasonable doubt, Mr. Recker's conviction on that count was based on insufficient evidence. * * *
 The trial court erred in imposing a sentence that is not commensurate with the seriousness of Mr. Recker's conduct, that is not consistent with sentences imposed on similar crimes and offenders, and that imposes an unnecessary burden on state resources. * * *
 The trial court erred in imposing statutory maximum and consecutive terms of imprisonment, in violation of Mr. Recker's right, pursuant to Blakely v. Washington, to have a jury make fact findings necessary under Ohio Law to impose statutory maximum or multiple terms of imprisonment. * * *
 {¶ 6} In support of the first assignment of error, Recker argues he was convicted of complicity to burglary, a second degree felony, which requires the State to prove beyond a reasonable doubt that "any person other than an accomplice of the offender is present or likely to be present" during the commission of the crime. Recker contends his due process rights were violated because neither the indictment nor the jury instructions specified the "present or likely to be present" element of burglary, making it impossible for the jury to convict him. As a result, Recker contends his conviction on count 31 must be vacated.
 {¶ 7} In response, the State asserts that we may only review the record for plain error since Recker waived his objection by failing to object to the jury instructions at trial. The State contends that the trial court instructed the jury as to
the elements of burglary, including the definition of "occupied structure" and that any error in failing to instruct on the "present or likely to be present" element can be remedied by the jury's consideration of the "occupied structure" element. The State also argues it presented sufficient evidence to prove that a resident of the home may have been home or could have been home during the commission of the crime, and the jury was properly instructed. Therefore, the State argues we cannot find plain error.
 {¶ 8} The first assignment of error essentially contains two issues. First, we must decide whether Recker was properly charged in the indictment, and second, we must decide whether the jury was properly instructed. As to the first argument, the sufficiency of an indictment is a matter of law, which will be reviewed on appeal under the de novo standard. State v. Hernon (Dec. 29, 1999), Medina App. No. 2933-M, unreported (citing State v. Smoot (July 18, 1997), Clark App. No. 96-CA-107, unreported). Any objection to an indictment must be "raised by motion prior to trial." Crim.R. 12(C). In this case, the trial court required all pre-trial motions to be filed before July 25, 2005. (J. Entry, Jul. 19, 2005). Recker failed to challenge the indictment prior to trial, and therefore has waived any argument thereto. See generallyState v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.
 {¶ 9} Although Recker waived his right to challenge the indictment on appeal, we may review the indictment under the plain error standard. Crim.R. 52(B). In charging complicity, the State has the option of charging the offense "in terms of [the complicity statute], or in terms of the principal offense." R.C. 2923.03(F). The State chose to charge Recker under the complicity statute, as the indictment states in pertinent part:
 he did solicit or procure, and/or conspire with another to commit the offense of burglary and/or aid or abet another in committing the offense of burglary, at the Michael Schuerman residence * * * in violation of Ohio Revised Code Section 2923.03(A)(1), (2) and (3) and 2911.12(A)(2), COMPLICITY (BURGLARY), a felony of the 2nd degree[.]"
(Indictment, Jun. 29, 2005, at Count I (emphasis in original)).[1]
Because the State included the statute number for the principal offense, and because the State has discretion in how it charges the offense of complicity, we cannot find plain error on the face of the indictment.
 {¶ 10} Recker also failed to object to the proposed jury instructions at trial. The record indicates several instances where the trial court and counsel met in chambers or held a discussion on the record, but outside the hearing of the jury, to review and amend the jury instructions. Recker's failure to object to the jury instructions waives any error except plain error. Crim.R. 30(A), 52(B); Findlay v.Reinhart, 3rd Dist. No. 5-04-45, 2005-Ohio-1918, at ¶ 7-8.
 {¶ 11} The plain error doctrine should be applied only under exceptional circumstances and in order to prevent a manifest miscarriage of justice. State v. Long, (1978), 53 Ohio St.2d 91, 95-96,372 N.E.2d 804 (citing United States v. Rudinsky (C.A.6, 1971), 439 F.2d 1074, 1076
(internal citations omitted)). See also id. at fn.5. In applying federal precedent to Ohio law, the court stated:
 [o]rdinarily, therefore, the failure to object to a jury instruction violative of R.C. 2901.05(A) constitutes a waiver of any claim of error relative thereto. Further, a jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.
Id. at 96-97.[2] Approximately two years later, the court appliedLong and held that the trial court's failure to instruct the jury as to every material element is not per se plain error or cause for reversal.State v. Adams (1980), 62 Ohio St.2d 151, 154, 404 N.E.2d 144. Instead, appellate courts are required to review the trial record to determine the impact of the missing instruction and to determine "whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." Id.
 {¶ 12} In count 31, Recker was charged with complicity to burglary, so the State must prove the elements of both complicity and burglary beyond a reasonable doubt. The burglary statute states:
 [n]o person, by force, stealth, or deception, shall do any of the following: * * *
 Trespass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.
R.C. 2911.12(A)(2). The State did not include this language as part of the indictment, but, as we mentioned above, there is no reversible error for its failure to do so. The "present or likely to be present" language is an essential element of the offense charged. See State v.McElroy, 3rd Dist. No. 2-2000-29, 2001-Ohio-2113. See generally In re Meatchem, 1st Dist. No. C-050291,2006-Ohio-4128.
 {¶ 13} Because the "present or likely to be present" element is essential to proof of the offense charged, we are troubled by the absence of any mention of that element on the record. Although counsel appeared to be aware of the issue at trial, there is nothing in the record to indicate to the jury that it should consider the "present or likely to be present" element. As a result, the record in this case fails to demonstrate that the jury ever found beyond a reasonable doubt that anybody was "present or likely to be present" as to count 31.
 {¶ 14} In opening statements, the State argued:
 Todd Gerdeman * * * will tell you about the conversations he had leading up to the guns and the whereabouts and the likelihood of Mr. Schuerman and his family being home on given days. Mr. Gerdeman will tell that he did call Mr. Recker and say, I don't think that they're home on this particular night because I think they're at a tournament game because the Fort Jennings boys basketball team was in their regional boys basketball tournaments at that time.
(Trial Tr., at 274-275). During its case in chief, the State presented testimony from 43 witnesses. The testimony of three witnesses, Larry Dean Barton, Todd Gerdeman, and Mike Schuerman, is relevant to the offense charged in count 31. Barton testified he had committed various theft offenses at Recker's request. (Trial Tr., at 400-420; 454-460; 484-489). As to the theft at the Schuerman residence, Barton testified:
 Kevin took me to the house * * * It was raining out. Pull in the driveway. So, you know, it's raining, there's not going to leave any tire marks. He took me by the place, he took me back, he got ready to go the bar. He took off and he had me take off. * * * He said, go in their house and they've got guns. Get, you know, get the guns.
(Trial Tr., at 485:8-16). Barton testified that he knocked on the front door, made sure nobody was home, and hit the door with his shoulder to break it open. (Trial Tr., at 487-488). Barton located Schuerman's guns in the basement, broke open the gun cabinet in which they were stored, and removed the guns from the home. (Trial Tr., at 487-488). Barton also testified that Gerdeman notified Recker when the Fort Jennings High School basketball games were scheduled because the Schuerman family usually attended the basketball games and would not be home. (Trial Tr., at 484-485).
 {¶ 15} Gerdeman testified that at Recker's request, he called Recker and notified him as to when the Fort Jennings High School basketball games would be played. (Trial Tr., at 1140-1144). Gerdeman believed Recker would use this information to break into the Schuermans' home or to steal something from the home. (Trial Tr., at 1140-1144).
 {¶ 16} Schuerman testified that he, his wife, and his two sons live in their home, which is their permanent residence. (Trial Tr., at 826, 830). He testified that he and his family attended a Fort Jennings basketball game, which started at 7:00 p.m. on the night his guns were stolen. (Trial Tr., at 827). Schuerman stated that the family returned home immediately after the game. (Trial Tr., at 827).
 {¶ 17} During closing arguments, the State said:
 [Gerdeman] told us how the defendant had made inquiry about Mr. Schuerman, * * * knowing that the communities follow their teams and support their teams and their kids, knowing that if [Fort Jennings] were in this tournament, that [the Schuermans], without a doubt, would likely be supporting and be gone for these games, and asked Mr. Gerdeman, let me know if they're gone or when the game is going on so I can do what I have to do, essentially.
(Trial Tr., at 1402). In response, defense counsel argued:
 oh, there's big evidence, I mean, my goodness, how would you ever find out that all the people in Fort Jennings would go to the tournament when they've got the best tournament team they've had in years? Well, you better have to hire somebody to find that information out for you. Well, that doesn't make any sense. There isn't anyone here that when that was occurring didn't know that everybody in Fort Jennings was going to go to the basketball game, just like the small town I'm from * * * . If they ever made it that far in the tournament, everybody goes.
(Trial Tr., at 1430:3-14).
 {¶ 18} The suggested jury instructions for R.C. 2911.12(A)(2) state:
 The defendant is charged with burglary. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the ___ day of ___, ___, and in ___ County, Ohio, the defendant, by (force) (stealth) (deception) trespassed in * * *
 (an occupied structure) * * * that was the permanent or temporary habitation of (insert name of occupant) when another person (other than an accomplice of the defendant) was (present) (likely to be present), with purpose to commit therein the offense of (insert name of applicable criminal offense).
4 Ohio Jury Instructions (2005), Section 511.12(1) at 388. The Ohio Jury Instructions do not define the phrase "present or likely to be present". However, the Tenth District Court of Appeals has stated, "the term `likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." State v. Green (1984), 18 Ohio App.3d 69, 72,480 N.E.2d 1128.
 {¶ 19} Both the statute and the suggested jury instructions include the "present or likely to be present" element and case law exists, which would enable the parties and the trial court to define that element for purposes of a jury instruction. However, as to count 31, the trial court instructed the jury as follows:
 the defendant is charged with complicity to commit burglary. Before you find the defendant guilty, you must find beyond a reasonable doubt that on or about the 17th day of March, 2004, and in Putnam County, Ohio, the defendant purposely solicited another to commit the offense and/or aided and abetted, or abetted another in committing the offense of burglary, to wit: Did knowingly solicit or procure another to commit the offense of burglary and/or abet another in committing the offense of burglary of the Michael Schuerman residence * * * It must be established in this case that at the time in question, there was in the mind of the defendant a specific intention to solicit or procure another to aid or abet committing the offense of burglary. Burglary is the trespass by force, stealth, or deception in an occupied structure with purpose to commit a theft offense.
(Trial Tr., at 1481-1482 (emphasis added)).[3] The trial court defined "burglary" at least two other times in its charge in exactly the same language as quoted above, and it defined the terms "force", "stealth", "trespass", "purpose", "occupied structure", "habitation", "property", and "theft offense". (Trial Tr., at 1443-1445; 1451). The trial court also defined "occupied structure" as a "house, or any portion thereof, which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not a person is actually present." (Trial Tr., at 1444:3-7). However, the trial court never mentioned the phrase "present or likely to be present."
 {¶ 20} There is evidence in the record to support a finding that nobody was actually present when Barton broke through the front door. However, there is also evidence in the record from which the jury could have concluded that members of the family were still "likely to be present" at some time during the burglary.
 {¶ 21} The trial court sent the jury into deliberations with a general verdict form, which, as to count 31, stated, "We, the jury, find the defendant is (*)___ of COMPLICITY (BURGLARY)." (Verdict Form, Aug. 5, 2005, at 6). The verdict form contains neither a reference to the appropriate statutes, nor a reference to the elements of the crime. In fact, the form is so general that it does not refer to the indictment or any offense "as charged."
 {¶ 22} The State failed to mention "the present or likely to be present" element in opening statement, during its case in chief, and in closing argument. The State's arguments and the testimony it solicited allude to the element, but nowhere was it directly mentioned. Likewise, defense counsel did not argue the element in opening statement, the motion for acquittal made at the close of evidence was a general motion challenging the sufficiency of the evidence as to every element of every offense charged, and the closing argument vaguely implied that the Schuermans would attend a basketball game because "everybody" in the community attended. Finally, the jury instructions do not mention the "present or likely to be present" element, and neither does the verdict form.
 {¶ 23} On this record, the impact of the missing instruction is that there is nothing to indicate that the jury properly considered the element of "present or likely to be present," which is an essential element of proving burglary under R.C. 2911.12(A)(2). The evidence clearly supports the "occupied structure" element; however, we are not willing to equate the definition of "occupied structure" with any definition the trial court could have given for "present or likely to be present." See generally State v. Crawford, 1st Dist. No. C-030540, 2004-Ohio-3895, at ¶ 5-6 (no plain error where trial court's definition of "occupied structure" included the "present or likely to be present" language in trial on R.C. 2911.12(A)(1), which does not require the essential element of "present or likely to be present" found in R.C.2911.12(A)(2)). Therefore, we believe a manifest miscarriage of justice resulted from the jury's inability to consider each essential element of the crime charged, which amounts to plain error.
 {¶ 24} Despite this error, Recker was given a full and fair instruction on third-degree felony burglary, a violation of R.C.2911.12(A)(3). To prove a violation of this statute, the State must prove 1) trespass; 2) in an occupied structure; and 3) purpose to commit in the structure any criminal offense. R.C. 2911.12(A)(3) differs from R.C. 2911.12(A)(2) only in that it does not require the structure to be a temporary or permanent habitation, nor does it require a person other than an accomplice to be present or likely to be present. Therefore, we sustain the first assignment of error, but remand this matter to the trial court to enter judgment under R.C. 2911.12(A)(3).
 {¶ 25} In the third assignment of error, Recker contends the trial court erred by sentencing him to maximum and consecutive sentences. The basis of this argument is without specific findings made by the jury or admissions made by the defendant, imposing a sentence greater than the statutory minimum violates the holding in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
 {¶ 26} The trial court imposed maximum sentences under R.C. 2929.14(C) and consecutive sentences under R.C. 2929.14(E). The Ohio Supreme Court determined that both R.C. 2929.14(C) and 2929.14(E) are unconstitutional because they require trial courts to make factual findings, which have not been determined by a jury or were not admitted by the defendant.State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraphs 2 and 3 of the syllabus (citing United States v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621; Blakely; andApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435). Because the trial court sentenced Recker pursuant to unconstitutional statutes and because his direct appeal was pending at the time Foster was decided, we must vacate the sentence and remand this matter to the trial court for a new sentencing hearing. Id. at ¶ 103-104. The third assignment of error is sustained.
 {¶ 27} Having sustained the third assignment of error pursuant toFoster, the issue presented in the second assignment of error is not properly before us for consideration. The judgment of conviction entered by the Putnam County Common Pleas Court is affirmed in Appellate Case Number 12-05-21. In Appellate Case Number 12-05-22, the judgment of conviction is reversed as to count 31 but affirmed on all other counts. However, pursuant to Foster, the sentences imposed in both cases are vacated and this cause is remanded for further proceedings.
Case No. 12-05-21 Judgment affirmed. Sentence vacated, and causeremanded. Case No. 12-05-22 Judgment affirmed in part and reversed inpart. Sentence vacated and cause remanded.
 ROGERS, P.J., and SHAW, J., concur.
[1] Count 1 of the June 29, 2005 indictment was renumbered as count 31 when the cases were later consolidated.
[2] R.C. 2901.05(A) provides that a person accused of committing an offense is innocent until proven guilty, and it places the burden of proof on the government to prove "all elements" of the offense beyond a reasonable doubt.
[3] We note the trial court did not file the written instructions it allowed the jury to take into deliberations. However, there is no contention that the written instructions varied from the oral instructions. Therefore, we must presume the accuracy of the oral instructions as evidenced in the transcript. State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 24.