[Cite as *State v. Wallace-Lee*, 2020-Ohio-3681.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-882 |
| | : | |
| TOVA I. WALLACE-LEE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of July, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Tova I. Wallace-Lee appeals from her conviction of murder. Wallace-Lee contends the trial court erred by giving a defective instruction on self-defense and by improperly imposing post-release control. She also claims the State failed to present evidence sufficient to sustain the conviction and that the conviction was against the weight of the evidence. Finally, Wallace-Lee contends her trial counsel was ineffective.

{¶ 2} We conclude Wallace-Lee has failed to demonstrate that counsel's conduct fell below an objective standard of reasonableness. She has also failed to demonstrate error in the jury instructions. We further conclude that the record contains evidence sufficient to support the conviction for murder and that the conviction was not against the manifest weight of the evidence. Finally, we agree with Wallace-Lee that the trial court erred by imposing post-release control for an unclassified offense.

{¶ 3} Accordingly, the judgment of the trial court is reversed regarding the imposition of post-release control. In all other respects, the judgment of the trial court is affirmed. This matter is remanded for the trial court to issue an amended judgment entry in accordance with this opinion.

## I. Facts and Procedural History

{¶ 4} On November 3, 2018, Wallace-Lee and Tre-Ana Tarver used Facebook to engage in a series of communications during which the two argued over a man with whom they were both involved. The communications were extended to include Mahogany Bruce and Adra Tarrent, two of Tarver's friends. Over the course of approximately seven hours, the online argument escalated; at its culmination, Wallace-Lee and Tarver agreed

to meet in order to fight one another. The two initially agreed to meet at the home of Wallace-Lee's cousin, but Wallace-Lee later instructed Tarver to come to her residence on East Church Street in Xenia.[1]

{¶ 5} Around 11:00 p.m., Bruce, Tarver and Tarrent arrived at Wallace-Lee's home in Bruce's car. They parked in a lot located between a church and the backyard of Wallace-Lee's home. Tarver exited the car and walked toward Wallace-Lee, who was on the back porch of her home. Wallace-Lee also walked toward Tarver, and the two met in the yard. During a short encounter, Tarver threw a punch at Wallace-Lee, who then stabbed Tarver. One stab wound entered Tarver's chest and traveled at least two inches before penetrating her heart. Tarver also was stabbed in her left jaw/cheek area and twice in her back. Tarver died as a result of her injuries.

{¶ 6} Wallace-Lee was indicted on one count of murder in violation of R.C. 2903.02(B) and one count of felonious assault in violation of R.C. 2903.11(A)(2). A jury trial was conducted in April 2019.

{¶ 7} At trial, Bruce testified that when the trio arrived at the church parking lot, she and Tarrent stayed with the vehicle while Tarver walked to the edge of the parking lot and into Wallace-Lee's backyard. Bruce testified Wallace-Lee, who had been on her back porch when they arrived, walked over to meet Tarver. Bruce testified she observed Tarver swing her fist at Wallace-Lee, but she did not see whether the blow connected. She testified the two women began to engage in a fistfight, and then she observed Tarver fall to the ground while screaming that she had been stabbed. Bruce testified she then ran over and pushed Wallace-Lee away. She further testified that a tall man came and

---

[1] The residence belonged to Wallace-Lee's grandparents, with whom she resided.

took Wallace-Lee into the house.

**{¶ 8}** Xenia Police Officer Andy Bishop was one of several officers who responded to the scene upon a dispatch regarding a fight.[2]   He testified that he pulled up to the front of the East Church Street residence and proceeded into the backyard where he observed two officers attempting to render aid to Tarver.   He testified that, as he neared the officers, a woman approached him and stated, "You can go ahead and take me to jail now."   Tr. p. 242.   Bishop told the woman to calm down and then asked for her name. The woman identified herself as Wallace-Lee, pointed at Tarver and stated, "They tried to come and fight me.   I had my knife with me and I stabbed her."   Tr. p. 244.

**{¶ 9}** Bishop testified that Wallace-Lee's grandmother then suggested they go inside the house, as it was cold outside.   He accompanied Wallace-Lee inside the house, where Wallace-Lee's grandparents and her aunt and uncle were also present.   Once they were inside, Bishop asked Wallace-Lee to explain what had occurred.   He testified that, according to Wallace-Lee, she and Tarver had been arguing on Facebook about a boy, and they planned to meet to fight.   Wallace-Lee told Bishop that she instructed the three women to come to her home for the fight.   She also stated that she knew when they arrived at her home, because they posted a message stating, "We're outside."   Tr. p. 248.   Bishop testified Wallace-Lee further stated "she walked to the backdoor, grabbed a knife off the kitchen table, because she was scared, and walked outside."   *Id.* Wallace-Lee stated that the victim "swung on her with a closed fist and then [Wallace-Lee] stabbed her."   Tr. p. 249.   During the conversation, Wallace-Lee's aunt took

---

[2] According to the record, sometime between the incident and the trial, Bishop moved to Michigan, where he began a job with a Michigan police department.   Nonetheless, he testified at trial.

Wallace-Lee's phone and walked away with it.

{¶ 10} According to Bishop, Wallace-Lee did not indicate that anyone else punched her or that any of the three women had a weapon. He also testified that Wallace-Lee did not claim anyone had approached her door or tried to get inside the home. He further testified that Wallace-Lee did not claim to have told the women to leave the property or that she planned to call the police.

{¶ 11} Xenia Police Detective Matt Miller also testified for the State. According to Miller, he interviewed Wallace-Lee at the police department.[3] Miller testified Wallace-Lee told him she received a message from Tarver indicating she had arrived at Wallace-Lee's residence. She stated that she then looked out the window, saw the three women, grabbed a knife, and went outside. She stated that she took the knife because she felt threatened. Wallace-Lee initially indicated she then blacked out and could not remember anything else.

{¶ 12} According to Miller, Wallace-Lee later stated that she met Tarver in the middle of the backyard, where the two got into a one-on-one fight. Wallace-Lee told Miller that Tarver hit her in the face, and Wallace-Lee then swung back at Tarver. Wallace-Lee went on to state that the two fell to the ground and then the two other women came and began to engage in the fight. Wallace-Lee told Miller that she then stabbed Tarver.

{¶ 13} Miller also testified that Wallace-Lee later changed her version of the details again and indicated that she and Tarver were in a one-on-one fight and Tarver hit her

_____

[3] The interview was recorded, and the recording demonstrates that Miller appropriately advised Wallace-Lee of her constitutional rights prior to the interview.

first. She told Miller that she then swung back. Wallace-Lee told Miller that she and Tarver were standing when she stabbed Tarver, and the two then fell to the ground. Wallace-Lee indicated that Tarver yelled out that Wallace-Lee had a knife, and then the other two women came over and joined in the fight.

{¶ 14} The State presented evidence that some of the messages regarding the fight had been deleted from Wallace-Lee's phone. The State also presented evidence that Tarver's blood was on the knife and that Wallace-Lee's DNA was found on the knife blade and handle. The evidence showed the knife had been found on the back porch of the home.

{¶ 15} In her defense, Wallace-Lee presented the testimony of her uncle, Bryan Wallace.[4] Wallace testified he had a felony drug conviction and had been released from federal prison approximately three weeks prior to the incident. At the time of the offense, he was living in his parents' home along with Wallace-Lee, and he was home on the night of the fight. He testified that he wanted to smoke, so he followed Wallace-Lee out of the house onto the back porch. He testified that Wallace-Lee did not say anything to him as they walked out. Wallace testified that he observed Tarver, Bruce and Tarrent in the parking lot behind the "backyard of the house." Tr. p. 458. He also observed Tarver step into the yard as Wallace-Lee walked to meet her. According to Wallace, the two women "met in the middle of the yard" where they began to fight. Tr. p. 459. When asked if he observed anybody throw a punch, Wallace responded negatively. However, when asked to describe the fight, he described it as a "fist fight[ ]," "just throwing punches

_____

[4] Wallace identified Wallace-Lee as his niece, but he also referred to her as his sister, claiming that his parents had adopted Wallace-Lee following the death of her mother.

at each other." *Id.* According to Wallace, Tarver and Wallace-Lee fell to the ground. At this point, he observed the other two women "fast walking" toward Tarver and Wallace-Lee. Tr. p. 460. He testified that it took approximately 15 to 20 seconds for the two women to get from the parking lot to where Wallace-Lee and Tarver were fighting. Wallace testified that the two women began "jumping" his niece, and he then ran out "to break it up." Tr. 460-462. He testified that, when he "started breaking it up, "one of the ladies said that she ha[d] a knife. And then I seen the knife and I grabbed it." Tr. p. 462. Wallace testified the knife was in Wallace-Lee's hand when he grabbed it. He then took his niece into the house. He estimated the entire event lasted "a couple of minutes – maybe." Tr. p. 463.

{¶ 16} The jury convicted Wallace-Lee on both counts. During the sentencing hearing, the trial court merged the offenses, and the State elected to proceed on the murder conviction. The court imposed a sentence of 15 years to life and imposed post-release control for the murder and felonious assault convictions.

{¶ 17} Wallace-Lee appeals.

## II.     Jury Instructions on Self-defense

{¶ 18} The first assignment of error asserted by Wallace-Lee states:

THE TRIAL COURT ERRED IN ITS INSTRUCTIONS ON SELF-DEFENSE.

{¶ 19} Wallace-Lee argues the trial court's instructions on self-defense were improper.

{¶ 20} Jury instructions provided by a trial court "must be a correct, clear, and complete statement of the law applicable to the case." *McBride v. Quebe*, 2d Dist.

Montgomery No. 21310, 2006-Ohio-5128, ¶ 50, quoting *Roberts v. State Farm Mut. Auto. Ins. Co.*, 155 Ohio App.3d 535, 2003-Ohio-5398, 802 N.E.2d 157, ¶ 48. Normally, courts review a trial court's decisions regarding jury instructions for an abuse of discretion. *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. However, Wallace-Lee's failure to object to the jury instructions in this case waived all but plain error. *McBride* at ¶ 48. Plain error is demonstrated when a "manifest miscarriage of justice" results from an improper jury instruction. *State v. Recker*, 3d Dist. Putnam Nos. 12-05-21 and 12-05-22, 2007-Ohio-216, ¶ 11.

{¶ 21} Wallace-Lee first claims the trial court erred by referring to self-defense as an affirmative defense. We note the word "affirmative" was used only once in more than six pages of self-defense instructions. Specifically, when it began the self-defense instruction, the trial court stated, "Tova Wallace-Lee is asserting the affirmative defense known as self-defense as it relates to both charges to wit: Murder and Felonious Assault." Tr. p. 564-565. The word "affirmative" was not defined, and it was not emphasized by the trial court or the parties. The jury was also correctly instructed that the burden of proof was on the State to demonstrate that Wallace-Lee did not act in self-defense.[5]

{¶ 22} Wallace-Lee does not explain how this one word resulted in any specific or

---

[5] Effective March 28, 2019, R.C. 2901.05 was modified to require "the prosecution [to] prove beyond a reasonable doubt that the accused person did not use force in self-defense * * *. R.C. 2901.05(B)(1). The State argues that this modification was not retroactive, and thus was not applicable to an offense committed, as here, before March 28, 2019. This court has concluded that shifting the burden of proof on self-defense to the State is not retroactive. *See State v. Koch*, 2019-Ohio-4099, ___ N.E.3d ___, ¶ 103 (2d Dist.). But since the trial court's instructions reflected the burden of proof modification, we will review the instruction from this perspective. We note that the statutory modification did not alter elements of the self-defense. *Id.* at ¶ 101.

general prejudice to her, and we cannot say that the court's one-time usage of the word, even if incorrect, was error, let alone plain error.

{¶ 23} Wallace-Lee next asserts it was inappropriate for the trial court to give an instruction on the definition of "fault." In support, she states the evidence showed "she abandoned her plans to fight [Tarver]. It was [Tarver] and her cohorts who initiated the action. [Tarver] was a trespasser on the real property where [Wallace-Lee] was residing."

{¶ 24} As noted in Part III below, a defendant is not entitled to a self-defense finding if she was at fault in creating the situation giving rise to the affray. At the time of trial, the Ohio Jury Instructions did not set forth a definition of fault. The trial court gave the following instruction as to fault:

> Fault as used in the definition of self-defense is as follows: The Defendant, Tova Wallace-Lee, was at fault in creating the situation giving rise to the fight if the State proves beyond a reasonable doubt that she chose to confront Tre'Ana Tarver, or chose to knowingly go to a place where Tre'Ana Tarver was, or refused to move in a direction away from Tre'Ana Tarver even when the Defendant, Tova Wallace-Lee's actions were otherwise completely lawful.

{¶ 25} This instruction appears to have been based upon cases in which courts have found that a defendant was at fault in creating the situation giving rise to the affray, violated a duty to avoid danger or to retreat when choosing to confront the victim, chose to knowingly go to a place where the victim would, be or refused to move away from the victim, "even when the defendant's action was otherwise completely lawful." *See State*

*v. Ellis*, 10th Dist. Franklin No. 11AP-939, 2012-Ohio-3586, ¶ 15. *Accord State v. Porter*, 8th Dist. Cuyahoga No. 102257, 2016-Ohio-1115, 61 N.E.3d 589, ¶ 37.

**{¶ 26}** Wallace-Lee does not argue that the instruction was incorrectly stated. Instead, she argues it was not appropriate to give an instruction on fault because the evidence, in her view, showed she was not at fault. Because Wallace-Lee cannot show that the "at fault" definition provided by the trial court caused the jury to reject her claim of self-defense, we cannot find plain error. Further, because the instruction tracked the language used in persuasive case law, and because there was a legitimate question regarding Wallace-Lee's fault in initiating the fight, we cannot conclude that the trial court erred by giving the "at fault" instruction.

**{¶ 27}** Wallace-Lee next complains "the trial court did not state provision one in O.J.I. 421.21 that a defendant is allowed to use deadly force [as there was] [e]vidence presented that tends to support a finding that the defendant used deadly force in self-defense."

**{¶ 28}** *Ohio Jury Instructions* (OJI) CR 421.21 includes the language that a "defendant is allowed to use deadly force." Prior to its April 13, 2019 revision, OJI 421.21 addressed self-defense in the context of non-deadly force, while OJI 421.19 addressed the defense when deadly force was used. After the revision, the two sections were reversed: section 421.21 discusses deadly force, and section 421.19 discusses non-deadly force. Prior to the revision, the OJI 421.19 deadly force self-defense instruction did not contain a statement that a defendant was permitted to use deadly force. This language was added to the revised OJI 421.21 deadly force self-defense instruction. While not readily apparent from this record, it is fair to assume the revisions had not been

published in time for the April 24, 2019 trial. This assumption is supported by the fact that the parties agreed to an instruction on deadly force that tracked the language used in the pre-2019 version of OJI 421.19. Furthermore, the fact that the newer version of the deadly force instruction contains the contested statement does not render the trial court's instruction incorrect. The instructions in OJI "are not mandatory. Rather, they are recommended instructions, based primarily upon case law and statutes." *State v. Jones*, 2015-Ohio-5029, 52 N.E.3d 263, ¶ 15 (12th Dist.). We also note the instructions stated that the State was required to prove that Wallace-Lee's only reasonable means of escape was by the use of deadly force. Thus, the jury was aware Wallace-Lee was allowed to use deadly force in certain situations. We can find no error, let alone plain error, in this instruction.

{¶ 29} Finally, Wallace-Lee asserts that the trial court should have given an instruction on "no duty to retreat."

{¶ 30} A person generally has a duty to retreat, if possible, before resorting to lethal force. *State v. Williford,* 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990); *State v. Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, ¶ 15. "Implicit in the retreat requirement is a value judgment that retreat is preferred to a loss of life resulting from the use of deadly force." (Citation omitted.) *Dale* at ¶ 15. "The only exception to this duty to retreat is when the [defendant] is attacked in his own home, in which case there is no duty to retreat * * * ." *State v. Eng*, 2d Dist. Montgomery No. 14015, 1994 WL 543277, *5 Sept. 30, 1994). This exception to the duty to retreat, also known as the "castle doctrine," is codified at R.C. 2901.09(B). *State v. Lewis*, 2015-Ohio-3684, 976 N.E.2d 258, ¶ 13 (8th Dist.). However, courts have found that the no duty to retreat/castle doctrine

exception does not apply where the evidence established that the confrontation (fight) occurred in the defendant's front yard. *See State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 39. *Accord State v. Black,* 5th Dist. Stark No. 2011 CA 175, 2012-Ohio-2874, ¶ 40; *Eng* at *5.

{¶ 31} Wallace-Lee asserts that she had no duty to retreat because Tarver was a trespasser on her property. We first note that there was no dispute that Wallace-Lee invited Tarver to her home to engage in a fight, and there was no evidence that Wallace-Lee told Tarver to leave. Further, there was no dispute that Wallace-Lee was not in her home, or even on the porch, at the time of the deadly fight. The evidence demonstrated that the fight took place in the middle of the back yard. On these facts, Wallace-Lee was not entitled to a jury instruction that she had no duty to retreat.

{¶ 32} Upon review of this record, we find no error, and certainly no plain error, in the jury instructions on self-defense. Accordingly, the first assignment of error is overruled.

### III.     Sufficiency and Manifest Weight of the Evidence

{¶ 33} The second and third assignments of error asserted by Wallace-Lee are as follows:

APPELLANT'S CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT ARE BASED UPON INSUFFICIENT EVIDENCE.

APPELLANT'S CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 34} In both these assignments of error, Wallace-Lee contends the evidence did

not support her conviction for murder because the State failed to disprove that she acted in self-defense.[6]   In support, Wallace-Lee asserts she made statements to the police that supported her claim of self-defense.   She further appears to assert she had no duty to retreat prior to stabbing Tarver because Tarver, Bruce, and Tarrent were "intruders and trespassers" on her property.

{¶ 35} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states:

> An appellate court's function when reviewing the sufficiency of the evidence
> to support a criminal conviction is to examine the evidence admitted at trial
> to determine whether such evidence, if believed, would convince the
> average mind of the defendant's guilt beyond a reasonable doubt. The
> relevant inquiry is whether, after viewing the evidence in a light most
> favorable to the prosecution, any rational trier of fact could have found the
> essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 36} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence

---

[6] Since the felonious assault count was merged into the murder count, we will refer only to the murder count in the sufficiency and weight of the evidence evaluation.

is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, a " 'court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 37} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 38} Finally, and importantly, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 39} In Ohio, a defendant is not entitled to a finding of self-defense if (1) the defendant was at fault in creating the situation giving rise to the affray, (2) the defendant did not have a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of such force, or (3) the defendant violated any duty to retreat or avoid the danger. *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, ¶ 12 (2d Dist.), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979). These elements are cumulative. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), citing *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶ 40} As discussed, there was a factual issue concerning the "at fault" element. The jury was appropriately instructed on the "at fault" element and, based upon the evidence, we cannot conclude that the jury's resolution of this issue was against the manifest weight of the evidence. The second element requires a defendant to have a bona fide belief that she was in imminent danger of death or great bodily harm and that the only means of escape was the use of force. The test for this element involves "a combined objective and subjective test." *State v. Stargell*, 2016-Ohio-5653, 70 N.E.3d 1126, ¶ 50 (2d Dist.), quoting *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). The defendant's belief must have been objectively reasonable under the circumstances, and she must have subjectively believed she needed to resort to deadly force to defend herself. *Id.*

{¶ 41} Aside from Wallace-Lee's statement to Detective Miller claiming that the three women "jumped" her before she stabbed Tarver, there was no evidence to support her assertion that she believed she was "in danger of death or great bodily harm." The

jury was free to discredit this version of the event in light of the fact that Wallace-Lee made two other, contradictory statements to Miller, including one in which she admitted that Bruce and Tarrent did not approach until after she had stabbed Tarver. We also note Wallace-Lee did not tell Officer Bishop that Bruce and Tarrent had been involved in the physical fight. Wallace-Lee's injuries to her brow and temple were consistent with her claim that she was hit in the face by Tarver. But other than a scratch to her hand, she had no additional injuries, as one might expect if two additional women were simultaneously hitting her. Further, no weapons were found other than the knife Wallace-Lee used to stab Tarver. Wallace-Lee did not assert, and there was no evidence to indicate, that any of the three women wielded a weapon. Based upon this evidence, the jury was free to credit the evidence that Wallace-Lee and Tarver engaged in a one-on-one fistfight during which Wallace-Lee stabbed Tarver. Given the evidence supporting this version of the event, we cannot say the jury clearly lost its way in rejecting the assertion that Wallace-Lee had an objectively reasonable belief she was in danger of death or great bodily harm.

{¶ 42} "Another component contained within the second element is the defendant's bona fide belief that the use of force was the only means of escape. Part of this entails a showing that the defendant used 'only that force that [was] reasonably necessary to repel the attack.' " (Citations omitted.) *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 55 (4th Dist.). "If * * * the amount of force used is so disproportionate that it shows an 'unreasonable purpose to injure,' the defense of self-defense is unavailable." *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶ 27.

{¶ 43} As stated, there was competent, credible evidence in the record upon which

the jury could have reasonably relied to conclude that, at most, Tarver and Wallace-Lee threw a few punches before Wallace-Lee stabbed Tarver four times. The stab wound to Tarver's chest was sufficiently forceful to pierce Tarver's heart. This wound was described as lethal by the medical examiner. There were additional stab wounds to Tarver's face and back. There was no evidence that Tarver had a weapon. In sum, the jury could have reasonably concluded based upon the evidence presented that Wallace-Lee "used deadly force when [s]he was not faced with deadly force[, and such] degree of force * * * was neither warranted under the circumstances nor proportionate to the perceived threat." *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 36.

{¶ 44} Upon review of the evidence, we cannot conclude that the jury clearly lost its way in assessing the validity of Wallace-Lee's claim that she had a bona fide fear of death or great bodily harm preceding the stabbing or that the force she used was necessary or proportionate.

{¶ 45} The third element of self-defense requires a determination whether Wallace-Lee "violated a duty to retreat" before resorting to the use of deadly force against Tarver. Since, as stated above, Wallace-Lee was not entitled to invoke the castle doctrine, the duty to retreat applied and required her to use any means of retreat reasonably available. *See State v. Miller*, 149 Ohio App.3d 782, 2002-Ohio-5812, 778 N.E.2d 1103, ¶ 8 (1st Dist.). "What is reasonably available necessarily depends upon the particular facts and circumstances of each case [and] is a question of fact for the trier of fact * * *." *State v. Barnett*, 2d Dist. Montgomery No. 14019, 1994 WL 567551, *3 (Aug. 31, 1994).

{¶ 46} Wallace-Lee did not make any claim that she attempted to retreat from the fight prior to stabbing Tarver, nor was there any other evidence presented to indicate that she attempted to escape the fight. The record contains no evidence to indicate that Wallace-Lee was prevented from retreating. Thus, we conclude the evidence did not support a finding in favor of Wallace-Lee regarding to the third element of self-defense.

{¶ 47} The jury did not lose its way in rejecting the self-defense argument raised by Wallace-Lee at the trial. Her conviction was supported by sufficient evidence and it was not against the manifest weight of the evidence.

{¶ 48} The second and third assignments of error are overruled.


### IV. Ineffective Assistance of Counsel

{¶ 49} Wallace-Lee's fourth assignment of error is as follows:

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 50} Wallace-Lee's assignment of error raises three issues related to the performance of her trial attorney. First, she contends trial counsel was ineffective for failing to seek suppression of statements she made to the police. She next claims trial counsel should have objected to the instructions given by the trial court regarding self-defense. Finally, she claims that trial counsel should have sought instructions on lesser included offenses rather than basing his trial strategy upon a claim of self-defense.

{¶ 51} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v.*

*Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Thus, two elements must be demonstrated: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the proceeding would have been different. *Id.* When reviewing a claim of ineffective assistance of counsel, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. English*, 2d Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10, quoting *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998). Thus, "[h]indsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31, citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 52} Wallace-Lee first asserts that counsel was ineffective for failing to seek suppression of statements made to Officer Bishop at the scene. In support, she argues she was a suspect and thus entitled to *Miranda* warnings. Alternatively, she claims her statements were not voluntary because she was "hysterical, crying and screaming."

{¶ 53} The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996); *State v. Blagajevic*, 21 Ohio App.3d 297, 299-300, 488 N.E.2d 495 (8th Dist.1985). Thus, we must address the question of whether such a motion was merited.

**{¶ 54}** In addressing when *Miranda* warnings are required, this court has stated:

Until suspects are "in custody," they do not have a right to warnings under *Miranda* [*v. Arizona*], 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [1966]. *See, e.g., State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 13; *State v. Frady*, 142 Ohio App.3d 776, 780, 757 N.E.2d 12 (2d Dist.2001). Custodial interrogation is " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *State v. Roberts*, 32 Ohio St.3d 225, 226, 513 N.E.2d 720, n. 1 (1987), quoting *Miranda* [at 444] * * *. In order to determine if a person is in custody for purposes of *Miranda*, the court must determine whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

A seizure equivalent to an arrest exists where there is: (1) an intent to arrest, (2) the seizure is made under real or assumed authority, (3) accompanied by an actual or constructive seizure of the person, and, (4) which is so understood by the person arrested. *State v. Walker*, 2d Dist. Montgomery No. 24542, 2012-Ohio-847, ¶ 22; *State v. Pyle*, 2d Dist. Greene No. 2003-CA-35, 2003-Ohio-6664, ¶ 14. "A seizure is an arrest * * * if a 'reasonable person' in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the

degree the law associated with formal arrest." (Internal citations omitted.) *Pyle* at ¶ 14. The mere fact that an individual is sitting in the back seat of a police cruiser, with rear doors that do not open from the inside, without more, is not sufficient to establish custody. *State v. Harris*, 2d Dist. Montgomery No. 13279, 1992 WL 317447, *5 (Nov. 3, 1992). But if the police take actions that would lead a reasonable person in the defendant's position to believe that he was going to be detained indefinitely, the encounter is custodial. *State v. Wilkins*, 2d Dist. Montgomery No. 20152, 2004-Ohio-3917, ¶ 20.

*State v. Moody*, 2012-Ohio-3390, 974 N.E.2d 1273, ¶ 12-13 (2d Dist.).

{¶ 55} We also note that "[e]ven where *Miranda* warnings are not required, 'a confession may [still] be involuntary [and excludable] if on the totality of the circumstances, the defendant's will was overcome by the circumstances surrounding the giving of the confession.' " *In re R.L.*, 2014-Ohio-5065, 23 N.E.3d 298, ¶ 21 (2d Dist.), quoting *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 18, citing *State v. Fille*, 12th Dist. Clermont No. CA2001-08-066, 2002-Ohio-3879, ¶ 15, and *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶ 56} There is nothing in this record to support a finding that Wallace-Lee was in custody or its equivalent when her statements were made. Nor is there evidence that her will was overborne by Bishop. Wallace-Lee's grandmother invited Bishop into the home where he asked Wallace-Lee to explain what had happened. Bishop testified that he was, at that time, merely attempting to ascertain what had occurred. He did not know whether Wallace-Lee was a suspect or the victim of a crime as Wallace-Lee had only

informed him that the other women came over and tried to fight her before she defended herself. Indeed, it can be inferred that Bishop did not consider her a suspect, as he permitted Wallace-Lee's aunt to take her cell phone, which potentially contained evidence, and to walk away with it. Wallace-Lee was not placed in handcuffs, and her freedom was not restricted in any other manner. Wallace-Lee was not a minor, and her family was present in the home with her. There was no evidence that she or any member of her family attempted to stop the interview, and there was no evidence that Bishop threatened, coerced or otherwise induced Wallace-Lee to speak to him.

{¶ 57} We conclude that this record contains no indication that Wallace-Lee was in custody or that her statements to Bishop were involuntarily made. Thus, because a motion to suppress would have been meritless, Wallace-Lee's trial counsel was not ineffective for failing to file one.

{¶ 58} We next address the claim that counsel was ineffective because he failed to object to the instructions on self-defense. As stated in Part II above, we find no error in the instructions provided; therefore, we cannot say trial counsel was ineffective in this regard.

{¶ 59} Finally, we turn to whether trial counsel was ineffective for pursuing a claim of self-defense rather than seeking instructions on lesser-included offenses or inferior-degree offenses. Specifically, Wallace-Lee asserts counsel should have sought instructions on voluntary manslaughter, involuntary manslaughter (proximate result of aggravated assault), and reckless homicide, rather than relying on a claim of self-defense.

{¶ 60} The Ohio Supreme Court has recognized that a "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish

ineffective assistance of counsel." (Citations omitted.) *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996). Courts have also held that "[i]t is a reasonable trial strategy to argue self-defense and not request an instruction on an inferior degree offense or lesser included offense." (Citations omitted.) *State v. Baker*, 111 Ohio App.3d 313, 324, 676 N.E.2d 143, 150 (10th Dist.1996).

{¶ 61} In discussing a similar situation, this court has stated:

We agree that the evidence presented at trial could have supported an instruction on aggravated assault. [The defendant] claimed, however, that he had acted in self-defense. Trial counsel could have reasonably concluded that presenting the jury with conflicting theories of the case would have been counterproductive. The theory of self-defense is based upon fear, whereas aggravated assault must be based upon passion or rage. Counsel may have concluded that it would have been more difficult to convince the jury that [the defendant] had been in fear while at the same time presenting evidence that he had acted out of passion or rage. Counsel apparently believed that self-defense was the stronger argument. Moreover, it was the argument that was most consistent with [the defendant's] statements to the police.

* * *

Debatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy was available. Although [the defendant] points out that self-defense and aggravated assault are "not mutually exclusive," counsel

could have reasonably concluded that the best tactic was to request an instruction as to only one of these theories. We will not second-guess that decision or categorize it as ineffective assistance.

*State v. Baker*, 159 Ohio App.3d 462, 2005-Ohio-45, 824 N.E.2d 162, ¶ 11-12 (2d Dist.).

**{¶ 62}** In this case, trial counsel could have reasonably determined that the evidence supported self-defense rather than manslaughter or reckless homicide. Entitlement to instructions on either voluntary manslaughter or involuntary manslaughter, as requested by Wallace-Lee, would have required a showing that she acted under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by Tarver. *See* R.C. 2903.03, R.C.2903.04, and R.C. 2903.12. Wallace-Lee asserts the "serious provocation was caused by [Tarver] and her cohorts and the throwing of the first punch." We cannot see how Wallace-Lee could have credibly claimed she was under a sudden passion or sudden fit of rage when she spent the day engaged in online arguments that culminated in an agreement to meet to fight. Further, since the sole purpose of the meeting was to engage in a physical fight, it would not have been credible for Wallace-Lee to claim that Tarver's action of punching Wallace-Lee was a serious provocation. Moreover, Wallace-Lee's statements to Bishop and Miller that she was scared and felt threatened were more consistent with a claim of self-defense. Thus, we cannot conclude that trial counsel's decision to pursue a claim of self-defense rather than seeking instructions on manslaughter constituted ineffective assistance.

**{¶ 63}** Similarly, we cannot conclude that trial counsel was ineffective for failing to seek an instruction on reckless homicide. The evidence demonstrated that Wallace-Lee decided to take a knife out of the house to a fight she had pre-arranged. Then when

Tarver punched her, Wallace-Lee responded by stabbing Tarver four times. One of those stabs was to the chest, administered with enough force to travel into Tarver's heart. Trial counsel may well have concluded this evidence did not support a reckless homicide instruction.

{¶ 64} "The strategy of defense counsel to refrain from seeking a charge on a lesser included offense will not be second-guessed on appeal." *State v. Pryor*, 8th Dist. Cuyahoga No. 55454, 1989 WL 62214, *5 (June 8, 1989). The record fails to disclose why counsel elected not to request those instructions. Without any evidence suggesting trial counsel's reason for not seeking the instructions, and given the nature of the evidence presented at trial, we will presume that counsel was motivated by trial strategy.

{¶ 65} The fourth assignment of error is overruled.

## V. Post-release Control

{¶ 66} Wallace-Lee's fifth assignment of error states:

THE TRIAL COURT IMPROPERLY ADVISED APPELLANT ON POST-RELEASE CONTROL.

{¶ 67} Wallace-Lee argues the trial court improperly imposed a three-year mandatory term of post-release control for the felonious assault conviction. In support, she notes the felonious assault conviction was merged with the murder conviction for purposes of sentencing. She further argues, "[p]ursuant to R.C. 2967.28(B), murder (life imprisonment) is specifically excluded from * * * post-release control." The State concedes the trial court erred by imposing post-release control for the felonious assault conviction, as that conviction merged into the murder conviction.

{¶ 68} "Individuals convicted of unclassified felonies, such as murder, are not subject to post-release control." *State v. Hibbler*, 2d Dist. Clark No. 2019-CA-19, 2019-Ohio-3689, ¶ 11, citing *McCain v. Huffman*, 151 Ohio St.3d 611, 2017-Ohio-9241, 91 N.E.3d 749, ¶ 3; *State v. Lawrence*, 2d Dist. Montgomery No. 24513, 2011-Ohio-5813, ¶ 6. "Instead, when a person convicted of an unclassified felony is released from prison, that person is subject to parole." *Hibbler* at ¶ 11, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 36; R.C. 2967.13. Thus, the trial court erred by imposing post-release control rather than parole for murder and in associated post-release control with the felonious assault conviction.

{¶ 69} Both parties assert that this error is capable of being remedied via a nunc pro tunc order. We agree. In *State v. Howard*, 2d Dist. Montgomery No. 28328, 2019-Ohio-5357, we noted:

> The Ohio Supreme Court has held that the trial court may correct the improper imposition of post-release control on a murder charge by means of a nunc pro tunc entry and that no resentencing hearing is required. *State ex rel. Roberts v. Marsh*, 156 Ohio St.3d 440, 2019-Ohio-1569, 128 N.E.3d 222, ¶ 10-11. The supreme court explained that "no resentencing hearing was required in the situation here, because the trial court simply deleted a postrelease-control provision that should not have been included in the initial sentence entry." *Id.* at ¶ 11.

*Id.* at ¶ 47.

{¶ 70} We conclude the trial court erred in sentencing as outlined above. Therefore, the fifth assignment of error is sustained.

## VI.     Conclusion

{¶ 71} Wallace-Lee's fifth assignment of error is sustained and her other assignments of error are overruled.   The judgment of the trial court is reversed with respect to the imposition of post-release control, and the matter is remanded to the trial court for purposes of amending the judgment entry.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Marcy A. Vonderwell
David R. Miles
Hon. Michael A. Buckwalter